**UNITED STATES v. HAYNES et al.**

Crim. A. No. E–4939.

United States District Court
W. D. Pennsylvania.

Oct. 19, 1948.

Judgment Affirmed March 1, 1949.

W. Wendell Stanton, Asst. U. S. Atty., of Pittsburgh, Pa., for the Government.

Van A. Barrickman, of Pittsburgh, Pa., for defendants.

GOURLEY, District Judge.

This is a criminal case and it comes before the Court on motion of defendants for arrest of judgment and/or a new trial.[1]

On the 17th day of March, 1948, the Grand Jury returned a true bill of indictment against Benjamin J. Haynes, William D. Williams and Nathan Barnes (William D. Williams died subsequent to the return of said indictment and the government proceeded to trial against Benjamin J. Haynes and Nathan Barnes), said indictment charged the defendants of violating the federal criminal statutes, more particularly 18 U.S.C.A. § 88, now § 371; 26 U.S.C.A. §§ 2803(a), 2833, 2834 and 2831:—

---

[1] "Motion in Arrest of Judgment

"And Now, to wit: this 12th day of June, 1948, comes Benjamin J. Haynes and Nathan Barnes, two of the defendants above named by their attorneys, Van A. Barrickman and J. Harry Pershing, Esquires, and file this their motion in arrest of judgment and assign in support thereof the following averments and reasons:

"First: The verdict is against the law.

"Second: The verdict is against the evidence.

"Third: The United States failed to present sufficient evidence to convict the defendants beyond a reasonable doubt.

"Fourth: The learned Court erred in admitting improper evidence in permitting the government to ask the defendant, Benjamin J. Haynes, if he had not been selling intoxicating liquors in Youngstown, Ohio.

"Fifth: The learned Court erred in admitting the testimony of a co-defendant, Nathan Barnes, in rebuttal.

"Sixth: The defendants should be ordered discharged by the learned Court taking all the circumstances of the evidence into account.

"Seventh: The learned Court erred in its charge to the jury in not stressing properly the question of the presumption of innocence of the defendants, in not explaining the full effect of a reasonable doubt and in not commenting upon the evidence most favorable to the defendants.

"Eighth: The defendants, Benjamin J. Haynes and Nathan Barnes were prejudiced by a promise of immunity to Nathan Barnes, a co-defendant.

"Ninth: The defendants were prejudiced by improper remarks of a government witness."

"Motion and Reasons for New Trial

"And Now, to wit: this 12th day of June, 1948, comes Banjamin J. Haynes and Nathan Barnes, two of the defendants above named, by their attorneys, Van A. Barrickman and J. Harry Pershing, Esquires, and file this their motion and reasons for new trial and assign in support thereof the following averments and reasons:

"First: The verdict is against the law.

"Second: The verdict is against the evidence.

"Third: The United States failed to present sufficient evidence to convict the defendants beyond a reasonable doubt.

"Fourth: The learned Court erred in admitting improper evidence in permitting the government to ask the defendant, Banjamin J. Haynes, if he had not been selling intoxicating liquors in Youngstown, Ohio.

"Fifth: The learned Court erred in admitting the testimony of a co-defendant, Nathan Barnes, in rebuttal.

"Sixth: The defendants should be ordered discharged by the learned Court taking all the circumstances of the evidence into account.

"Seventh: The learned court erred in its charge to the jury in not stressing properly the question of the presumption of innocence of the defendants, in not explaining the full effect of a reasonable doubt and in not commenting upon the evidence most favorable to the defendants.

"Eighth: The defendants, Benjamin J. Haynes and Nathan Barnes, were prejudiced by a premise of immunity to Nathan Barnes, a co-defendant.

"Ninth: The defendants were prejudiced by improper remarks of a government witness."

(1) Conspiracy to violate the federal revenue laws;

(2) Transporting distilled spirits without containers having stamps;

(3) Carrying on a business of distiller;

(4) Delivering distilled spirits;

(5) Making and fermenting mash; and

(6) Depositing and concealing non-tax paid distilled spirits.

In considering the sufficiency of the evidence to sustain the verdict of a jury, the Court must take that view of the evidence which is most favorable to the government; must give to the government the benefit of all inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of the evidence. Affronti v. United States, 8 Cir., 145 F.2d 3; United States v. Toner, D.C., 77 F.Supp. 908. The verdict of the jury must be sustained if substantial evidence supports it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Michener, 3 Cir., 152 F.2d 880, 885; United States v. Toner, supra.

It is not necessary to recount the evidence at length.

During the month of August, 1947 and to on or about September 24, 1947, the defendants, Nathan Barnes and Benjamin J. Haynes, entered into an agreement with a person by the name of Johnson to engage in the manufacture and sale of distilled spirits. Johnson was the owner of a farm and was first approached by Haynes relative to the manufacture and sale of what is commonly known as "moonshine whiskey." Haynes, unquestionably in my mind, was the person who conceived the idea, and Barnes, who was easily led and with limited intelligence, joined with Haynes and agreed to lend his aid and be a party to the understanding reached between Haynes and Johnson. Haynes together with Barnes made available and delivered to Johnson the equipment in order that the still could be set up. They also delivered materials or ingredients which were to be used in the making and manufacture of the moonshine. It was agreed between Haynes, Barnes and Johnson that after the moonshine whiskey was manufactured, Haynes and Barnes would distribute the same, and the moneys realized from the sales were to be divided on an equal basis wherein Johnson received 50%, and Haynes and Barnes 50%. Williams, who is now deceased, was also to share in the amount realized by Haynes and Barnes. A week to ten days after the ingredients were delivered by Haynes and Barnes to Johnson, they returned to the farm of Johnson and secured two five-gallon cans of the moonshine. Five gallons were placed in one can and three gallons in another five-gallon can. Haynes and Barnes used as a means of transportation a truck owned by Haynes, and after the moonshine was placed in the truck, the defendants proceeded to a location in the area of Aliquippa and Ambridge, Pennsylvania. As a result of an investigation being made of Haynes which related to a matter not involved in this proceeding, the Police Department of Aliquippa, Pennsylvania, had occasion to inspect the truck of Haynes. In the truck were found two five-gallon cans of moonshine. As a result thereof, Haynes and Barnes were arrested, and after an investigation by both the state and federal officers, a complaint was filed against said defendants which resulted in the indictment being returned.

Defendant Johnson, the owner of the farm where the still was erected, was not prosecuted or indicted under federal law, but action was taken against him in a state court and upon a plea of guilty being entered, sentence was imposed. Johnson testified as a government witness.

The defense of Haynes was based on an alibi. He denied his guilt and introduced evidence to establish that at no time did he enter into an agreement with Barnes, Williams and Johnson to engage in the manufacture and sale of moonshine whiskey or to violate any other law of the United States relating thereto; that he had come to Aliquippa by train with Barnes, who was his friend, to seek the return of Mrs. Haynes to his home. It appears that some domestic differences had arisen between Mr. and Mrs. Haynes. That the only reason that he knows why he was arrested in the instant proceeding was due to the fact

that an agent of the Federal Bureau of Investigation had a personal feeling against him as a result of previous differences which had existed between him and the agent. The explanation of defendant Haynes as to the presence of his truck in the region of Aliquippa and Ambridge, Pennsylvania, was that he had loaned his truck to Williams, now deceased, and that he had no knowledge as to the use to which Williams was going to place the truck other than his desire to go to Ambridge, Pennsylvania, to secure furniture for Williams' wife.

There is no merit at all in any of the reasons set forth by Barnes for arrest of judgment and/or motion for a new trial.

The basic reason presented by defendant Haynes in his request for arrest of judgment and/or motion for new trial is premised on a question asked by the Assistant United States Attorney in his cross-examination. Said examination which relates to the question being set forth in Footnote 2.[2]

When government's counsel asked the defendant whether or not he sold any moonshine at his home, on objection being made, the Court sustained the objection. Counsel for defendant Haynes did not move for a mistrial or withdrawal of a juror, and did not take any further notice of the matter during the trial. No request was made to charge the jury relative thereto, and more particularly the defendant did not ask the Court to instruct the jury to disregard the question or its implication.

Since no request was made by counsel for Haynes to charge the jury relative thereto, the Court thought it inadvisable to bring the matter again into prominence or to enlarge on a situation which, I believe, was of no significance.

At the conclusion of the charge to the jury, the Court asked counsel for defendants on two separate occasions if there were any additional charge or comment which was desired. Counsel for the defendants expressed satisfaction of the charge and no exceptions were taken as provided by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.[3]

Where an accused makes no request for instructions and made no objection to the court's charge, and whose counsel at the conclusion of the court's charge repeated with an unqualified "no, sir," in response to query for suggestions or objections, counsel could not complain on a motion for new trial that the charge was fatally defective. Watts v. United States, 5 Cir., 161 F.2d 511, certiorari denied 332 U. S. 769, 68 S.Ct. 81; Federal Digest, Criminal Law, 1038(3).

I do not believe the circumstances called for a review by the Court on its own initiative because, in my judgment, just reason did not exist for the granting of a mistrial even if it had been requested. I, therefore, do not think any prejudice arose to defendant Haynes. Kempe v. United States, 8 Cir., 160 F.2d 406, certiorari denied 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1864.

If justice had been greatly miscarried, and it is apparent to me that it was not, I realize that the Court could intervene and grant a new trial although no objections were made by the defendants to the

---

[2] "Q. Well, do you live there at 523 Park Avenue? A. I owns that property there.
"Q. You own the property there? A. Yes, sir.
"Q. Do you know what goes on there? A. Beg pardon?
"Q. Do you know what goes on there? A. Oh, I should know, yes, sir, I do.
"Q. Do you? A. Yes, sir.
"Q. Sell any moonshine there?" The question was not answered.
[3] "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

charge of the Court. United States **v.** Rappy, 2 Cir., 157 F.2d 964.

Defendant Haynes contends that the question asked by government's counsel in its cross-examination relating to the sale of moonshine caused a substantial prejudice and directly violates the provisions of the Pennsylvania Act of March 15, 1911, as amended by the Act of July 3, 1947, P.L. 1239, Section 1, 19 Purdon's Penna.Statutes Annotated, Section 711, which Act provides as follows:

"In the trial of any person charged with crime, no evidence shall be admitted which tends to show that the defendant has committed, or has been charged with, or has been convicted of any offense, other than the one wherewith he shall then be charged, or that he has been of bad character or reputation unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

"Two. He shall have testified at such trial against a co-defendant, charged with the same offense.

"Three. The proof that he has committed or has been convicted of such other offense is admissible evidence as to the guilt or the degree of the defense wherewith he is then charged."

The state law is not binding upon the federal court in the trial of criminal cases. Federal courts are bound by such rules of procedure and evidence as Congress prescribes, and such further rules as the federal courts have adopted or from time to time may adopt in the light of general authority and sound reason. United States v. Montgomery, 3 Cir., 126 F.2d 151; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

The Pennsylvania Act of Assembly does not, therefore, govern or control the determination of the question which exists.

What, therefore, is the rule to be applied in federal courts with respect to impeachment of a defendant for the purpose of affecting the witness' credibility?

Both the courts and the legislators are sharply divided as to the right of the cross-examination of a witness for the purpose of impeachment even if the witness is a defendant in a criminal case. However, the law in this circuit seems to be that once a defendant takes a witness stand, he may be cross-examined for testimonial impeachment. United States v. Nettl, 3 Cir., 121 F.2d 927; United States v. Harrison, 3 Cir., 121 F.2d 930; United States v. Montgomery, supra; United States v. Klass et al., 3 Cir., 166 F.2d 373.

The rule with respect to impeachment for former conviction is that only convictions for a felony or misdemeanor amounting to crimen falsi are admissible to impeach a witness' credibility. This reflects the true purpose of impeaching evidence to disclose the personal turpitude of a witness and his insensibility to the obligations of his oath to speak the truth. United States v. Klass, supra.

There is no reason why the standard should be less exacting where no conviction is involved. United States v. Klass, supra.

I did not believe under the facts in this case that the question was proper to show intent, motive, identity, scheme or plan, etc. Even if it were, it would have been necessary for the government to show the defendant had been convicted of selling moonshine liquor at a time that would have been material to the offenses laid in the indictment. The government did not offer to prove that the defendant had been convicted of selling moonshine.

Examination cannot be made as to whether a defendant has ever been arrested, incarcerated, indicted or engaged in the violation of a law. These facts are immaterial for even innocent persons are arrested and are subject to indictment. Furthermore, a question relating to present violation of law is improper since under the Constitution no person is required to answer any question which would be self-incriminating. Amendment V, Constitution of United States, U.S.C.A.Const. Amend. V.

In short, acts of misconduct not resulting in conviction are not the proper subjects of cross-examination to impeach a witness or to establish and show intent, mo-

tive, identity, scheme or plan. United States v. Montgomery, supra.

The selling of moonshine liquor is not a crime involving moral turpitude or in the nature of an offense crimen falsi. It is not an offense malum in se, defined as one which is naturally evil as adjudged by the sense of a civilized community, but an act which is malum prohibitum, a wrong only because made so by statute, not involving any moral dereliction which carries with it a disregard of the obligation of an oath. 8 R.C.L. page 55; 22 C.J.S., Criminal Law, § 2; Commonwealth of Pennsylvania v. Schambers, 110 Pa.Super. 61, 167 A. 645.

The defendants' counsel is a man of mature age, an active practitioner at this bar for over forty years, and a former Assistant United States Attorney.

Since the Court did not permit the question to be answered and counsel representing.defendant Haynes made no request for the Court to charge the jury relative thereto, although opportunity was on two occasions given counsel to make such request, I do not believe the defendant should now be allowed to complain after an adverse verdict was returned against him. Ocha v. United States, 9 Cir., 167 F.2d 341.

Defendant Barnes failed to appear the second day of trial, and his counsel, who was the same attorney as represented defendant Haynes, requested the Court to proceed under the provisions of Rule 43 of the Federal Rules of Criminal Procedure.[4] This was agreed to by government's counsel. The trial proceeded for a half day and it was brought to the attention of the Court that defendant Barnes had failed to appear because of defendant Haynes telling him the trial had been continued. This matter was not brought to the attention of the jury. Defendant Haynes denied to the Court that he had influenced Barnes not to appear. The trial then proceeded with Barnes present. I, however, believe Barnes.

A most unusual situation arose as to defendant Barnes. He stated to the Court that he desired to testify but his attorney would not call him to the witness stand. Due to his persistence as to the offering of testimony, the Court permitted government's counsel to call him by way of rebuttal to contradict the testimony of defendant Haynes. This development was not known to the jury other than permission being granted to government's counsel to call Barnes in rebuttal.

I say the situation was most unusual in that the attorney representing both defendants called Haynes to the stand who presented an alibi, and offered testimony to show he was not guilty. Barnes admitted his guilt and definitely implicated Haynes.

Haynes is a man of mature judgment and thought. Barnes is the exact opposite and has limited intelligence and understanding.

I believe that counsel representing the defendants was only concerned with securing the acquittal of Haynes, and that Barnes' welfare was secondary; that Barnes was kept from the witness stand to help Haynes although he had no defense to the charges laid in the indictment. I can understand why Barnes' counsel did not want to call him, but, again from my observation of Barnes, he was interested in baring his soul of the truth.

"In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, Territorial courts, and courts-martial, and courts of inquiry, in any State or Territory, including the District of Columbia, the person so

---

4 "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 35." 18 U.S.C.A.

charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him. (Mar. 16, 1878, c. 37, 20 Stat. 30.)" 28 U.S.C.A. Section 632, now 18 U.S.C.A. § 3481.

■ The provision that defendant "shall, at his own request but not otherwise, be a competent witness", does not make the competency of one defendant as a witness dependent on the consent of a co-defendant, and his testimony voluntarily given is admissible against his co-defendant. Rowan v. United States, 5 Cir., 281 F. 137, certiorari denied 260 U.S. 721, 43 S.Ct. 12, 67 L.Ed. 481.

■ I believe the provisions of the Act of Congress are personal to the defendant. Where counsel represents two defendants, and one desires to testify, it is the duty of the Court to receive the testimony even though the defendant's counsel advises him not to testify.

Barnes was allowed to testify in rebuttal under examination of government's counsel after the Court explained to him, out of hearing of the jury and in the presence of his counsel, as to his rights and privileges under the laws of the United States.

Barnes testified that on or about the 22nd day of September, 1947, he went to the farm of Johnson in the truck owned by Haynes, and after they arrived, the eight gallons of whiskey were secured from Johnson; that he then proceeded to Aliquippa, Pennsylvania, where he was subsequently arrested; and that he had been to see Johnson on one prior occasion with Haynes. He also contradicted Haynes' testimony in many material respects. Barnes was subjected to a grueling cross-examination by his own counsel.

■ The order of the reception of evidence lies largely within the discretion of the trial judge. The desire of defendant Barnes to testify was not known to the Court until after the government had closed its case. There was no way possible for Barnes to testify other than by rebuttal, since his attorney would not call him to the witness stand. I do not believe any prejudice arose from said order of proof. In my judgment, it would have been a miscarriage of justice, and the extension of a helping hand by the Court to defendant Haynes to clear himself of the criminal charges, if I had not permitted Barnes to testify. United States v. Montgomery, supra.

The order in which testimony is presented at a criminal trial is solely within the discretion of the trial judge. The Court is to be impartial to both the government and the accused. I would certainly have favored the accused Haynes if I had not permitted the testimony of Barnes. Courts must not shut out the truth but should endeavor to develop it.

■ I believe that a federal judge had the right and duty to facilitate by direct participation the orderly progress of a trial, and the permitting of queries, which is an aid in clarifying testimony, is proper if done in a nonprejudicial manner. Ocha v. United States, supra.

■ From a study of the record and a thorough consideration of the argument of counsel, I believe there was ample substantial testimony supporting no other reasonable hypothesis than that of the guilt of each of the defendants on all charges. The verdict of the jury is well sustained. Unless there was some error in the conduct of the trial, the verdict of the jury must stand.

It is the duty of the Court to make positive that each of the defendants was given a fair and impartial trial.

I conclude that there was no error in the conduct of the trial and that the defendants were properly convicted. It would be a miscarriage of justice to grant a new trial. On this date an order will be filed denying defendants' motion for arrest of judgment and/or a new trial.