### SIMS *v.* STATE OF INDIANA.

[No. 30,645. Filed June 30, 1965. Rehearing denied September 29, 1965.]

*Smith & Steckbeck, Robert S. Smith, David A. Steckbeck,* and *Eugene O. Maley,* of Indianapolis, for appellant.

*John J. Dillon*, Attorney General, and *James Manahan*, Deputy Attorney General, for appellee.

ACHOR, J.—Appellant was charged and convicted of the offenses of kidnapping and robbery as defined by Acts 1929, ch. 154, §1, p. 477, and Acts 1941, ch. 148, §6, p. 447, being Burns Ind. Stat. Anno. §§10-2901, and 10-4101 (1956 Repl.).

The appellant contends, as stated in the motion for new trial, that the verdict is contrary to law and is not sustained by sufficient evidence. In his brief, he argues six propositions in support of these contentions.

The following is a brief statement of the facts in evidence necessary to comprehend the matters hereinafter discussed. On May 9, 1963, at about 11:00 p. m., Frank Robbins, an officer in the Indianapolis vice squad, was cruising the near-northwest area, out of uniform in an unmarked car. The appellant, Leroy Sims, flagged down Robbins and offered, or pretended to offer, to procure a woman for him and quoted a price for the woman to come to his car. This Robbins agreed to in order to set up an arrest of the prostitute, as well as of Sims, the procurer. At the designated meeting place appellant got into Robbins' car, produced a revolver which he held on Robbins, and told him to drive on. Sims forced Robbins to drive the car north of Indianapolis, during which time he took Robbins' wallet, watch, and cigarette lighter. When they reached the Hamilton-Tipton county line road, Robbins jumped from the car onto the embankment. Appellant fired at Robbins as he jumped.

Appellant drove off with the car. About two weeks later appellant was apprehended in Albuquerque, New Mexico. At that time he still was driving Robbins' car and had in his possession the billfold taken from Robbins.

. · In support of appellant's first proposition that the crime was the consequence of an entrapment instituted by the police officer, appellant cites the case of ■ *People* v. *Wright* (1963), 27 Ill. 2d 557, 190 N. E. 2d 318, in which it is stated:

"Entrapment is the conception and planning of an offense by an officer or other person and his procurement of its commission by one who would not have perpetrated it except for the trickery, · fraud, or persuasion of the entrapper...."

Appellant quotes at length the colloquy between himself and Robbins with regard to the procurement of a prostitute. This evidence discloses that the conception and planning of the offense was altogether that of the appellant and that there was no evidence that the police officer used any "trickery, fraud, or persuasion" which initiated the crime.

Appellant's second proposition urges that the trial court erred in overruling his motion for new trial because it was shown that appellant was of unsound mind during the trial and was unable to comprehend the nature of the charge and proceedings against him. Admittedly appellant did not properly raise the issue of insanity prior to the trial as provided by statute. Acts 1913, ch. 298, §1, p. 774, being Burns Ind. Stat. Anno. §9-1701 (1956 Repl.). However, in support of this proposition, appellant cites two Indiana statutes which provide that where it appears during the trial or prior to sentencing an accused is incapable of understanding the proceedings or the consequences thereof, the court shall have him examined by two disinterested psychiatrists. Burns Ind. Stat. Anno. §§9-1706a and 9-2217a (1964 Supp.). The circumstances pertaining to this contention are as follows:

On January 20, 1964, appellant was brought into

court for trial. He refused pauper counsel and undertook personally to conduct his own trial. A panel of jurors was seated and appellant proceeded *pro se* to interrogate the jury on voir dire. In his brief on appeal, appellant, by his present counsel, recites at length numerous statements and questions made by the appellant during the course of said interrogation which he asserts demonstrate that appellant was not in full comprehension of the charges of the felonies of kidnapping and robbery, and the seriousness of the proceedings in which he was involved. After appellant had exhausted all of his peremptory challenges, he stated that he was rejecting both the jury and the court.

At this point in the proceedings, attorneys Ferdinand Samper and Forrest Bowman, Jr., criminal lawyers in the city of Indianapolis, offered their services to appellant, which he accepted. A mistrial was granted at the request of said attorneys, and thereafter on March 18, 1964, the case was tried to a new jury, with said attorneys acting as counsel for said accused. Appellant was found guilty on both counts and from this judgment said attorneys refused to prosecute an appeal and present counsel was appointed for that purpose. They filed a motion for new trial, in support of which appellant's former attorneys Samper and Bowman filed an affidavit in which they stated that *after the trial* they came to believe that appellant was insane during the trial and at the time of the offense for which he was convicted.

We will first consider the sufficiency of appellant's brief upon this proposition. Counsel for appellant has clearly failed to comply with Rule 2-17(d) of this court which provides that:

"[T]he statement shall contain a condensed recital of so much of the evidence in narrative form with references to pages and lines of the tran-

script as is necessary to present accurately and concisely a *full understanding* of the questions presented...." [Our emphasis.]

As evidence of appellant's insanity, his present counsel relies primarily upon the conduct of appellant during his interrogation of the jury on voir dire, at the time the case was previously set for trial. This recital of the interrogation fails overtly to include statements made by appellant, which omitted statements clearly demonstrate that he *did understand* the seriousness of the charges made against him and the seriousness of the proceedings as a result of which he might be sentenced to prison for life.[1] Counsel for appellant, in their reply brief, would excuse their failure to include this evidence necessary to a *"full understanding* of the questions presented," on the grounds that they construed Rule 2-17(d) to merely require that appellant recite that portion of the evidence which tends to sustain his contention. To the contrary, the cases have construed the rule to require a good faith effort to comply with the rule as it is stated.

Nevertheless, because of the severity of the penalty, we have elected to consider the question of appellant's insanity, which question was raised by attorneys Samper and Bowman filed in support of the motion for new trial. There are many interesting facets to this

---

1. (SIMS) "Q. How would you feel individually, knowing that you can send a man to prison for life?"

(SIMS) "Q. You understood that the charges I am faced with could give me life?"

(SIMS to the Court) "My objection is as it was before, Your Honor. I feel you are prejudiced in some way and that you are trying to rush this trial. I don't know what your hurry is. I am facing fifteen years imprisonment or more."

The above statement demonstrates that appellant was aware of the practical effect of a life sentence with which he was confronted. Under a life sentence the appellant would not be subject to parole in less than 15 years—a fact which is not known to the average defendant.

affidavit, only two of which we will discuss. (1) Although said attorneys were given eight weeks in which to prepare for said trial, during which time they had access to the voir dire examination heretofore discussed, they excuse their failure to raise any question as to this issue of insanity prior to or during the course of the trial on the ground of "their ignorance with respect to the nature of mental illness." (2) We note that the only additional allegation of fact which the affiants presented in support of the conclusion stated in their affidavit was that appellant was unable to comprehend the finality of his conviction, and that he believed his attorneys had been bribed because they advised him that an appeal therefrom would be futile. No doubt the trial court weighed the affidavit of these attorneys who specialize in criminal law in the light of this unusual disclosure together with the fact that it was not supported by an affidavit of any expert authority regarding appellant's mental competence.

Since the issue of insanity was not formally presented by appellant prior to the trial as provided by §9-1701, *supra*, a determination of this issue under the statutes relied upon §§9-1706a and 9-2217a, *supra,* was discretionary with the court.

In considering this issue on motion for new trial, the court had ample reason to believe that, although appellant may have had a history of "erratic behavior," and although his conduct in the courtroom was obstreperous, there are no facts alleged or in evidence which require a conclusion that appellant was insane, within the meaning of the law, either at the time of the offenses or during the preparation for his trial. We find no reversible error upon this issue.

In his third proposition, appellant claims that he

is entitled to a new trial because his trial counsel, in violation of his constitutional right, prevented him from testifying in his own behalf by threatening to withdraw from the case if he did so. He stated that, although his attorneys told him they did not believe the facts he would have testified to, his testimony would have contained a substantial refutation of the testimony given by the three state's witnesses. In view of appellant's demonstrated disrespect for and contemptuous attitude toward the court, and in light of the failure of his own attorneys to believe the purported facts regarding which appellant proposed to testify, it is understandable why trial counsel refused to remain in the case if appellant rejected their counsel by taking the witness stand. Counsel had a duty to control the conduct of the case and to protect the interests of their client to the best of their ability, or to withdraw from the case.

Furthermore, as a court of appeal, we are confronted by the fact that nowhere has counsel indicated what the appellant's testimony would be if he were given a second trial and were permitted to take the witness stand in his own behalf. By reason of this failure this court can only conclude that appellant's testimony, if given, would have had no effect on the outcome of the case. In every appeal there is a general presumption which favors the appellee. *Dent* v. *Dent* (1961), 241 Ind. 606, 613, 174 N. E. 2d 336; *Keene* v. *City of Michigan City etc.* (1961), 241 Ind. 592, 595, 174 N. E. 2d 48; *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 189, 106 N. E. 2d 453, 108 N. E. 2d 57. Appellant has presented no facts which would support a contrary presumption.

In his fourth proposition, appellant urges that he should be granted a new trial in order to give him

an opportunity to present newly discovered evidence. This contention is evidently based upon the fifth specification of his motion for new trial, which states in general terms only that: "The defendant has a long history of irrational and erratic behavior." However, prior to and during the trial appellant was represented by able counsel. It is not contended either that such counsel was not familiar with this history of appellant's behavior, or in the exercise of reasonable diligence, would not have learned of such behavior. No specific facts are set forth either in the motion for new trial or in the affidavit support-. ing this contention. The general statement regarding "irrational and erratic behavior" might be applied to thousands of people with whom nonconformity is a. way of life. This general allegation, without supporting facts fails to support a motion for new trial.

In his fifth proposition, appellant urges that the trial court erred in permitting the state to file a belated counter-affidavit to appellant's motion for new trial, in violation of Rule 1-15 of this court. This proposition presents no reversible error because these affidavits or the substance thereof are not set out in either the assignment of error or in the concise statement of the record, as required by Rule 2-17(d), *supra*. As this court stated in *Clements et al.* v. *State* (1963), 244 Ind. 501, 502, 193 N. E. 2d 908, 909:

"It is fundamental that in order to present error on appeal such error must be set forth in the as-.signment of errors, and the specification or specifications of such assignment of errors, or the substance thereof, must appear in the 'Concise Statement of the Record' under Rule 2-17(d). Without such compliance the judges cannot give intelligent consideration to the issues on the appeal without resorting to the record (only one .copy of which is available to be shared by the five judges of this Court), . . . ."

It is stated in the briefs that these counter-affidavits were filed in refutation to appellant's allegation of insanity. As heretofore noted, appellant's briefs do not present even a prima facie case of insanity as a defense to the action before us. This court can only conclude that said affidavits were harmless, although filed after the time fixed by Rule 1-15 of this court. *Breaz* v. *State* (1939), 215 Ind. 605, 21 N. E. 2d 405; *Sharp* v. *State* (1939), 215 Ind. 505, 19 N. E. 2d 942.

Judgment affirmed.

Jackson, C. J. concurs in result.

Arterburn, Landis & Myers, JJ. concur.

NOTE.—Reported in 208 N. E. 2d 469.