Leroy SIMS, Jr., Petitioner-Appellant,

v.

Ward LANE, Warden of the Indiana State Prison, Respondent-Appellee.

No. 17193.

United States Court of Appeals Seventh Circuit.

May 23, 1969.

Kiley, Circuit Judge, dissented.

662

Thomas L. Shaffer, Notre Dame, Ind., for appellant.

Michael V. Gooch, John F. Davis, Indianapolis, Ind., John J. Dillon, Atty. Gen., of Indiana, Michael V. Gooch, Deputy Atty. Gen., Indianapolis, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from the denial of a petition for a writ of habeas corpus. In 1964, petitioner received a life sentence after a jury trial finding him guilty of kidnapping and robbery in contravention of Burns' Ind.Stat.Ann. §§ 10–2901 and 10–4101. The Indiana Supreme Court affirmed the judgment, Sims v. State, 246 Ind. 660, 208 N.E.2d 469 (1965), and certiorari was denied. 384 U.S. 922, 86 S.Ct. 1374, 16 L.Ed.2d 442.

Before ruling upon the habeas corpus petition, the district court appointed counsel, heard evidence and oral argument. An unreported memorandum opinion accompanied the order denying the petition.

In the Indiana Supreme Court, the district court, and here, petitioner has presented two principal contentions:

(1) The denial of his right to testify during his trial, and

(2) The denial of a psychiatric examination to determine whether he was competent to be tried.

As to the first contention, after the State had rested its case in the trial court, petitioner asked his two appointed counsel to permit him to take the stand and testify in his own defense. This is shown by the following excerpts from his trial lawyers' affidavit in support of the motion for a new trial:

"4. That during the trial of said cause, the defendant informed affiants herein that he was going to take the stand in his own behalf and state facts under oath which if believed would have refuted the testimony of Frank Robbins, Spurgeon Davenport and Sgt. Dabner, who testified for the State of Indiana.

"5. That the affiants herein did not believe that the matters the defendant asserted he would testify to were true and told the defendant that if he did take the stand to testify in his own behalf, that affiants would withdraw from the case and no longer represent him."

These facts were not known by the trial court until the time of sentencing.[1]

At the hearing on the motion for a new trial, defense counsel explained that they considered "it would have been [fatally] critical for him [Sims] to testify" at his trial. Without explanation, the trial court overruled the motion for a new trial.

In rejecting petitioner's first contention, the Supreme Court of Indiana stated (246 Ind. 660, 208 N.E.2d 469, 472):

"In view of appellant's demonstrated disrespect for and contemptuous at-

1. The affidavit in support of the motion for a new trial was filed on March 26, 1964, and the sentencing occurred later that day. The motion for new trial was not heard until the following month.

titude toward the court, and in light of the failure of his own attorneys to believe the purported facts regarding which appellant proposed to testify, it is understandable why trial counsel refused to remain in the case if appellant rejected their counsel by taking the witness stand. Counsel had a duty to control the conduct of the case and to protect the interests of their client to the best of their ability, or to withdraw from the case."

The court added that Sims' counsel did not indicate what Sims' testimony would be at a second trial and it concluded his testimony would have had no effect on its outcome.

At the evidentiary hearing on the petition for habeas corpus, the two witnesses were petitioner's trial counsel. They testified that Sims had been antagonizing the jury and that his testimony would have contradicted the testimony of every State witness and would have been inconsistent with the theory of the defense. For these reasons, they told Sims they could not continue to represent him if he took the stand and testified.

The district court rejected petitioner's claim that he was entitled to relief because he had not been permitted to testify at his trial. The court observed that no possible prejudice had been shown to exist and noted that the trial court had not been informed of petitioner's wish to testify until after the trial. The court concluded that petitioner's trial lawyers were diligent and that their representation had not rendered the trial a "sham or mockery of justice."

The affidavit of petitioner's two trial lawyers in support of his motion for a new trial for the first time raised the issue of his possible insanity. Thus the pertinent paragraphs of their affidavit provide:

"2. That they believe that the defendant is insane, that he was insane during the trial of this cause, and that he was insane at the time of the commission of the alleged offenses herein.

"3. That affiants interviewed the defendant herein at the Marion County Jail, on Monday, March 23, 1964, which date was after the defendant had been convicted of kidnapping by a jury and at the time of said interview the defendant was unable to comprehend the fact that he had been convicted of the charge of kidnapping. He was unable to comprehend the finality of such conviction, accused the attorneys of having been bribed by the State of Indiana to fail to protect his interest in the trial of said cause.

\* \* \* \* \* \*

"6. That since the conclusion of the trial herein affiants have become aware of the insanity of the defendant.

"7. That affiants are not trained in the field of emotional illness and did not recognize the insanity of the defendant from observation of the bizarre behavior of the defendant before the trial and during the trial herein.

"8. That the defendant was unable to properly aid counsel in the preparation of his defense because of the aforesaid insanity."

Besides relying on the foregoing affidavit to show that the trial judge should have ordered a psychiatric examination to determine whether petitioner was competent to proceed with his trial, petitioner relies on the transcript of a voir dire examination of prospective jurors he conducted in the trial court before he was represented by counsel; he also relies on his probation report.

Before the trial court passed upon the motion for a new trial, the State filed the counter-affidavit of a lieutenant in the Indianapolis Police Department to the effect that Sims' "conversation has been rational, his actions have been that of a sane person, he has shown no evidence of a persecution complex, and he has been able to distinguish right from wrong." The officer concluded that Sims was of sound mind before and during the trial and was well able to comprehend the nature of the charges against him.

At the hearing on the motion for a new trial, the transcript reveals that Sims' lawyers were arguing that he was entitled to a new trial because he had been denied the right to testify. There was no request for a psychiatric hearing, and the question of his competency was not argued. In denying the motion, the trial court did not comment upon petitioner's supposed incompetence.

On appeal to the Supreme Court of Indiana, Sims claimed that he was entitled to a sanity hearing under Burns' Indiana Stat.Ann. § 9–1706a, providing:

"When at any time before the trial of any criminal cause or during the progress thereof and before the final submission of the cause to the court or jury trying the same, the court, either from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, he shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two (2) competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing."

Although the wording of this statute does not seem to permit a defendant to request a sanity hearing after "final submission of the cause to the * * * jury," the court held that the trial court had discretion to grant Sims a hearing under this statute even if the issue was not presented prior to the trial. See 208 N.E.2d at p. 472. In approving the denial of an insanity hearing, the court said (208 N.E.2d at p. 472):

"No doubt the trial court weighed the affidavit of these attorneys who specialize in criminal law in the light of this unusual disclosure [Sims' belief that they had been bribed because they advised him that an appeal would be futile] together with the fact that it was not supported by an affidavit of any expert authority regarding appellant's mental competence."

The court concluded that no facts had been alleged nor evidence shown to require a conclusion that petitioner was insane at the time of the offenses or during the preparation of his trial, adding that his briefs "do not present even a prima facie case of insanity as a defense." See 208 N.E.2d at pp. 472, 473.

The district court also concluded that the evidence did not raise a bona fide doubt as to petitioner's ability to consult with his lawyers and to comprehend the proceedings against him, so that no sanity hearing was required.

I

Petitioner asserts that his counsels' refusal to permit him to testify violated the due process clause of the Fourteenth Amendment. He also relies on Article 1, Section 13, of the Indiana Constitution providing that an accused "shall have the right * * * to be heard by himself and counsel * * *" and on Section 3481 of the Criminal Code, providing that "the person charged shall, at his own request, be a competent witness" (18 U.S.C. § 3481).

In the federal courts, the privilege of an accused to testify in his own defense is merely statutory, abrogating the common law rule of incompetence. 18 U.S.C. § 3481. No case has been brought to our attention to support petitioner's contention that the Fourteenth Amendment accords a defendant in a state court a federal constitutional right to testify. To the contrary, the federal rule seems to be that the exercise of this right is subject to the determination of competent trial counsel and varies with the facts of each case.

In United States v. Garguilo, 324 F.2d 795 (2d Cir. 1963), the appellant urged that his lawyer had erroneously rejected his request to be placed on the stand. In rejecting this argument, the Court of Appeals noted that the decision whether to place a defendant on the stand in a criminal case is always a difficult one, and that experienced trial counsel will often differ as to the wisdom of such a

course. The court added (324 F.2d at p. 797):

> "It thus seems clear that Garguilo is merely complaining of alleged tactical errors or mistakes in strategy, and for these we can grant no relief."

To like effect, see Hudgins v. United States, 340 F.2d 391, 396 (3d Cir. 1965); United States ex rel. Darcy v. Handy, 203 F.2d 407, 427–428 (3d Cir. 1953), certiorari denied, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375.

Petitioner relies principally on United States v. Poe, 122 U.S.App.D.C. 163, 352 F.2d 639 (1965). There Poe had told his counsel that he wished to take the stand, but Poe was advised not to take the stand on the erroneous ground that the Government might then be able to use his inadmissible statements for impeachment purposes. In setting aside the conviction and sentence, the trial judge noted that if defendant had been properly informed of the applicable law, he would have testified in his own behalf and that since he had been misinformed as to the consequences of taking the stand, he was deprived of a fair trial. In affirming, the court explicitly confined its opinion to the extraordinary situation before it and concluded in language applicable here (352 F.2d at p. 641):

> "If he [defense counsel] had not disclosed it, or if he had indicated that his reason was a weakness in Poe's personality or a bad record, neither the District Court nor this court suggests that counsel's decision [not to put the defendant on the stand] could have been questioned in any proceeding in any court. Counsel therefore remain free to keep defendants from testifying whenever counsel see fit. Any suggestion to the contrary is chimerical."

 Even if the federal statute removing the disability of an accused to testify were applicable to the proceedings in the Indiana courts, that statute provides only that "the person charged shall, at his own request, be a competent witness." 18 U.S.C. § 3481. Here no such request was communicated to the trial court during the trial. Petitioner relies on United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963), certiorari denied sub nom. Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271, but there, through his counsel, defendant Salvatore Panico advised the trial court that he wished to testify in his own behalf, and he then personally renewed this request.[2] The trial judge not having been given a timely opportunity to rule on petitioner's asserted right to testify, it would appear that petitioner's quarrel is with his trial counsel. As in the *Garguilo* case, there is nothing to show that this trial was a "sham or a mockery" so that he is not entitled to habeas corpus relief by reason of ineffective assistance of counsel.

 To our knowledge, Article 1, Section 13 of the Indiana Constitution, which provides in part "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * * *" has never been interpreted as giving an accused an absolute right to testify over his counsel's objections. Counsel for petitioner has cited no Indiana case holding that he was denied a fair trial where his counsel concluded that it was in his best interest not to testify and where the trial judge was not even informed of his wish to testify. McDowell v. State, 225 Ind. 495, 497, 76 N.E.2d 249 (1947), suggests that the Indiana courts understand that provision as merely authorizing a defendant to undertake his own defense and subsequent appeal.[3] Moreover, we are bound by the interpretation of the state's highest court in interpreting its own constitu-

---

2. United States v. Haynes, 81 F.Supp. 63 (W.D.Pa.1948), affirmed, 173 F.2d 223 (3d Cir. 1949) (per curiam), is distinguishable for the same reason.

3. Petitioner also relies on Nahas v. State, 199 Ind. 117, 155 N.E. 259 (1927), but in that case, against defendant's wishes, his counsel withdrew a not guilty plea and entered a plea of guilty. The court did not deal with that portion of Article 1, Section 13, quoted above.

tioñ; the Indiana Supreme Court's rejection of petitioner's argument on appeal lays to rest the notion that petitioner had an Indiana constitutional right to testify against the advice of counsel. See 208 N.E.2d at p. 472. Finally, even if there were such an Indiana constitutional requirement, absent a similar requirement in the due process guarantee of the Fourteenth Amendment, its violation would not entitle petitioner to relief in this federal habeas corpus proceeding. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770; see 28 U.S.C. § 2241(c) (3).

## II

■ As already noted, under the Indiana Supreme Court's interpretation of the Indiana sanity hearing statute, even though the jury had already tried this case, the trial court still had discretion to grant a sanity hearing if it had "reasonable ground for believing the defendant to be insane." [4] Petitioner claims that this record reveals such ground, and that it was an abuse of discretion to deny the hearing. In Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (per curiam), the test for competency to stand trial was stated to be "whether he [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." This test has been applied in our perusal of this record to determine whether petitioner's constitutional [5] or statutory rights were violated.

■ In support of his demand for a psychiatric hearing, petitioner relies on three matters of record: (1) the affidavit of his two trial lawyers, (2) his own conduct in attempting to select a jury *pro se,* and (3) his probation report. The district court agreed with the Indiana Supreme Court and the trial court that this material did not raise the existence of a bona fide doubt as to defendant's competence within the meaning of Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815.[6] We share that opinion.

■ The pertinent parts of the affidavit are contained in paragraphs 2, 3, 6, 7 and 8, *supra.* With the exception of paragraph 3, those paragraphs are conclusory. Paragraph 3 relates to defendant's reaction after his conviction and does not show that he was incompetent during his trial. Moreover, at the February 1, 1968, evidentiary hearing on the petition for a writ of habeas corpus, petitioner's trial lawyers admitted that they did not consider him insane until observing his post-trial behavior. They also testified that they received no expert opinion with respect to his sanity. As the district court properly held, the affidavit is "obviously conclusory in nature and gave the trial judge neither facts nor expert opinion" in support of the claimed insanity.

Our study of the voir dire examination conducted by petitioner reveals a quick mind and a clear grasp of the seriousness of the situation confronting him. As the district judge stated, it shows that "Sims had a rational as well as a factual understanding of the nature of the proceedings." Petitioner's voir dire conduct was accurately described by one of his trial lawyers as "a brilliant job of cross-examination but a very poor job of voir dire."

---

4. Burns' Indiana Stat.Anno. § 9–1706a. In contrast to the "reasonable ground" test in the Indiana statute, the Illinois statute involved in United States ex rel. Robinson v. Pate, 345 F.2d 691, 695 (7th Cir.1965), modified and affirmed, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, required a sanity hearing "whenever a bona fide doubt is raised as to the defendant's sanity at the time of trial."

5. He relies on the equal protection and due process clauses of the Fourteenth Amendment.

6. There four defense witnesses expressed the opinion that Robinson was insane at trial time (383 U.S. at p. 383, 86 S.Ct. 836).

The transcript of that examination does reveal petitioner's deep-seated feeling or "delusions" (quoting the district judge) of racial persecution, but that is not "reasonable ground for believing the defendant to be insane." See United States ex rel. De Stefano v. Woods, 382 F.2d 557, 559 (7th Cir. 1967), affirmed on other grounds, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308. If hypersensitivity to discrimination were to be the hallmark, the courts would indeed be flooded with psychiatric hearings. We are not prepared to say that a criminal defendant's belligerence toward and contempt and suspicion of jurors indicates a lack of ability to comprehend the nature of the proceedings against him or to assist in his own defense. Refusal to accept the finality of an adverse verdict and recriminations against unsuccessful trial counsel may result from a sincere belief in one's innocence or an inability to admit one's guilt, but do not in themselves raise a bona fide doubt as to competence during trial.

Finally, petitioner relies on his probation report, but that report contains nothing to show that petitioner was incompetent or insane although the probation officer concluded Sims had a "borderline intelligence."

■ Nothing in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, holds that it is a denial of due process of law to refuse a competency hearing where, after a conviction, the accused's lawyers submit, without any expert testimony or convincing record support, that he was insane during the trial and at the time of the commission of the alleged offenses.[7] We are in accord with the

conclusion in petitioner's brief that "It is not possible to say, on this record, that Sims was a mental basket case during his trial in the Marion County [Indiana] Criminal Court."

Thomas L. Shaffer, of the faculty of the University of Notre Dame Law School, served as appointed counsel for petitioner in this Court. The excellence of his brief and oral argument deserves our thanks.

The judgment of the district court is affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent in part. If the only ground in the case were Sims' right to testify, I would agree with the result reached by the majority. My difficulty is with its disposition of Sims' mental competence contention.

The question is whether Sims' Fifth and Fourteenth Amendment right to due process was violated by the Indiana courts' refusal to provide him with a psychiatric examination and sanity hearing before pronouncing sentence. The district court judge thought this was the "more serious allegation raised by the petition." In my opinion the district court erred in not ordering Indiana to grant a new trial at which a preliminary hearing should be held to determine Sims' competence. My view is based primarily upon Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

It is true that the facts in *Robinson* were more favorable to Robinson than the facts in the case before us are favorable to Sims. I think *Robinson* teaches, however, that we should scrutinize decisions denying hearings, upon claims of mental

---

7. It seems well established that *Robinson* does not require a competency hearing in every case in which the question is raised. Wilson v. Bailey, 375 F.2d 663 (4th Cir. 1967) ; Tyler v. Beto, 391 F.2d 993 (5th Cir. 1968). Nothing in the cases relied on by petitioner is inconsistent with that interpretation. See, e. g., Green v. United States, 128 U.S. App.D.C. 408, 389 F.2d 949, 953–955 (1967) (en banc). On the contrary, those cases clearly establish that the convening of a competency hearing is within the discretion of the trial judge based on the facts which are before him. Heard v. United States, 129 U.S.App.D.C. 100, 390 F.2d 866 (1968). We have examined the cases cited by petitioner and find each to have turned on its special facts. We merely hold that the facts relied on in the present case do not rise to the level of a bona fide doubt as to petitioner's competency at the time of his trial.

incompetence, even if the facts are not similar to those in *Robinson*. See Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966). This is especially true for indigents who do not have the financial resources available to more fortunate defendants.

The majority shares the opinion of the district court that within the meaning of *Robinson* the material presented to the Indiana trial and supreme courts did not raise the existence of a bona fide doubt as to defendant's competence.

Sims does not challenge the constitutionality of the Indiana statute, which provides generally that "at any time before the submission of the cause to the court" it "shall" order a sanity hearing if there is "reasonable ground" for believing the defendant to be insane. Burns' Ind.Stat.Ann. Sec. 9–1706a Supp. (1956 Repl.). The Indiana Supreme Court, in affirming Sims' conviction, and the district court in the proceeding before us, thought that since the insanity issue was not raised prior to submitting the case to the jury, the trial judge had discretion whether to hold a hearing. Both courts thought, as the majority here thinks, that the material presented to the trial judge was insufficient to require a hearing under the statute.

The material considered by the district court and the majority, relevant to this point, is the affidavit of Sims' attorneys in support of the new trial motion, his own pro se activities at the original trial, and the pre-sentence probation report. The Indiana trial court and the district court both commend Sims' two court-appointed attorneys—who served for eight weeks without compensation in this case —for their probity and professional expertise. The affidavit states the belief that "defendant is insane, and that he was insance during the trial * * *"[1]; that they interviewed him shortly after conviction and found him "unable to comprehend the fact" that he was finally convicted of kidnapping, and that he accused the attorneys of having been bribed not to protect his interest. The affidavit states that the attorneys are not expert in psychiatry and that they did not recognize Sims' incompetence from his bizarre performance before and during the trial. Both the district court and this court view the affidavits as "conclusory" and devoid of facts or expert opinion.

At the hearing on the motion for new trial in the Indiana court there was ample opportunity for the judge to develop facts from the attorneys for the basis of their argument that "there was something wrong with this man mentally." If the judge thought expert testimony was needed in support of the motion, he could not have reasonably expected Sims himself to provide it. The trial court could have requested that a psychiatric examination be made and a report submitted on Sims' competence. This would not have consumed undue time.

The majority opinion refers to Sims' "quick mind and a clear grasp of the seriousness of the situation confronting him," and to the district court's, and one of Sims' attorneys', appraisal of Sims'

---

[1]. 18 U.S.C. Sec. 4244, Mental Incompetency after Arrest and before Trial, and Sec. 4245, Mental Incompetency Undisclosed at Trial, indicate the Congressional concern that defendants in federal cases be protected against prosecution, conviction and sentence where there is reasonable cause for believing the defendant is mentally incompetent, and impose upon the United States Attorney the obligation, if he has that belief, to move for determination, and an obligation upon the court where a motion is made in behalf of an accused or upon the court's own motion where such a belief is held; and under Sec. 4245 impose a similar obligation upon the Director of Bureau of Prisons to bring to the attention of the Attorney General who in turn shall transmit the Director's belief to the sentencing court which shall thereupon have the obligation of conducting a hearing. While these Sections pertain to federal cases, they have implications for federal habeas corpus proceedings where there is a claim of federal unconstitutional trial of a mentally incompetent.

intellect. However, a quick mind and an apparent understanding of a serious situation do not obviate the possibility of a serious mental disorder. See Pate v. Robinson, 383 U.S. 375, 385–386, 86 S.Ct. 836, 15 L.Ed.2d 815; Oliver, Psychiatry and Mental Health, 73–78 (1950). See also Menninger, The Vital Balance, 222–240 (1963), for several examples of rational behavior coupled with extreme personality disorders.

This court states that the pre-sentence report adds nothing to the questions of Sims' competence. However, the report does state that Sims has a "borderline intelligence," that he has a "convenient memory or is a pathological liar," and "is a threat to society." The opinion, moreover, makes little of Sims' conduct during his voir dire examinaion of jurors at the original trial which prompted the trial judge sua sponte to declare a mistrial. Sims had repeatedly refused court-appointed counsel. His examination of jurors was not only extremely aggressive and indeed insulting on the subject of racial discrimination, but also was interspersed with arguments and repeated threats to the judge that Sims would leave the courtroom. The judge observed this performance with an experienced eye and no doubt thought this irrational behavior was artful. At that time however the judge did not have the sworn view of the court-appointed attorneys or the probation report. They were *not before him until the motion for a new trial.*

This court has apparently resolved the sanity question against Sims without a state court hearing at which facts could be developed to bind federal courts. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). I consider that the material presented, together with the Indiana judge's own previous observation, should have raised a reasonable doubt sufficient to impel that court to order a hearing at that time into the question of Sims' competence. It seems anomalous that what struck the majority as a "deep-seated feeling" about racial persecution, and the district court as

"delusions," did not evoke a similar response from the Indiana trial court, and together with the affidavit and report raise a "reasonable doubt" of Sims' competency sufficient to impel an inquiry.

Sims' trial, conviction and sentence took place in 1964. In view of the passage of time since then, and the impracticality of a nunc pro tunc inquiry into Sims' competence—see the remandment order in *Robinson*—I would reverse and order the petitioner discharged unless the State of Indiana grants him a new trial within a reasonable time.