**Henry ODOM, Petitioner,**

v.

**Thomas ISRAEL, Respondent.**

**Civ. No. 73–196–E.**

United States District Court,
E. D. Illinois.

March 27, 1974.

Jerome J. Schlichter, Cohn, Carr, Korein, Kunin & Brennan, East St. Louis, Ill., for petitioner.

William J. Scott, Atty. Gen. of Ill. (Ronald Hanna, Asst. Atty. Gen., of counsel) for respondent.

## ORDER

FOREMAN, District Judge:

Petitioner, Henry L. Odom, presently confined in the Illinois State Penitentiary, Menard, Illinois, has filed this appli-

cation for a writ of habeas corpus. Respondent has filed a motion to dismiss or for summary judgment, and included therewith the transcript of Petitioner's state court proceedings. Petitioner then filed a memorandum of law supporting Petitioner's traverse of Respondent's motion.

Petitioner was convicted in a jury trial for the offenses of burglary and rape. Petitioner appealed to the Illinois Appellate Court, Fifth Appellate District which in 1970, affirmed the conviction, but vacated the sentence of 25 to 50 years and remanded for a hearing on aggravation and mitigation.

After reimposition of a 25 to 50 year sentence by the trial court, an appeal was taken to the Illinois Appellate Court on the sole issue of whether the sentence was excessive. That Court reduced the sentence to a minimum of eight and a maximum of twenty-five (25) years.

■ Petitioner's first claim is that the trial court did not have jurisdiction to try him, because at the time of his trial he had already been incarcerated for longer than the state statutory maximum. See Illinois Revised Statutes, 1971, Chapter 38, Sec. 103–5. The only alleged vehicle for depriving the trial court of its jurisdiction in this matter is the state statute. So, the whole question is one of the interpretation of the state statute and determining whether the trial court still had jurisdiction. This issue is one of state law and does not rise to the level of a federal question and, thus, is not cognizable for federal habeas corpus relief. See 28 U.S.C. Section 2254(a). See United States ex rel. Little v. Twomey, 477 F.2d 767, 770 (7th Cir. 1973).

The Court does not feel that this delay violates the constitutional guarantee of a speedy trial.

■ Petitioner also contends that his custody is unlawful and in violation of the equal protection clause of the United States Constitution in that the state's refusal to discharge or try Petitioner within the maximum statutory period constituted an invidious discrimination against Petitioner. The Court disagrees. The fact that Petitioner was not tried within the same time frames, as most other Illinois defendants does not automatically mean that the Petitioner's rights under the Fourteenth Amendment have been violated. It should be noted that part of this delay was caused by Petitioner's counsel who requested a continuance. There is no allegation that Petitioner was greatly prejudiced by the brief delay. The Court does not feel that this was the type of action covered by the equal protection clause.

■ The next contention advanced by Petitioner is that the failure of Petitioner's attorney to request leave to appeal to the Illinois Supreme Court regarding the issue of Petitioner's incarceration beyond the 120-day statutory maximum constituted ineffective assistance of counsel. The Seventh Circuit has held that where it is not shown that the trial was a sham or mockery, a petitioner is not entitled to habeas corpus relief by reason of ineffective assistance of counsel. Sims v. Lane, 411 F.2d 661 (7th Cir., 1969). See also United States v. Garguilo, 324 F.2d 795 (2nd Cir., 1963). A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice. There must have been a total failure to present the cause of the accused in any fundamental respect. United States ex rel. Marcelin v. Mancusi, 462 F.2d 36, 42 (2nd Cir., 1972). This Court feels that the failure of the trial counsel to appeal this matter does not constitute ineffective counsel under the authority cited.

Petitioner also claims that the identification of the Petitioner by the victim was extremely suggestive, tainted, and misleading. The victim was asleep during the morning of May 21, 1967, when she was awakened by an intruder. She testified that she could tell from the luminous dial of her bedroom clock that it was 5:00 A.M. Her intruder was standing over her with a knife at her throat and told her to wake up. She testified

that there was a night light in the bathroom and there was a street light outside the window. She also indicated that it was dusk and that there was not bright light, but "it was just beginning to get light in the wee hours of the morning." She testified that she was able to see in the room. Then her assailant forced her to go into the other bedroom and lie down on the bed and he started kissing her stomach. Then he had intercourse with her and penetration was accomplished. She further testified that she did not consent. After the intruder had departed she called the police and after their arrival she described her assailant. Although it is not entirely clear it appears that the only description which she provided the police was that her assailant was a black man with a mustache who was slightly taller than she was and wore dark glasses and had a coat. She also testified she was five feet four inches. Later that day, the police returned with what is sometimes referred to in the transcript as a photograph, but what really appears to be a sketch of a man. The victim testified that the "photograph" was not something taken by a camera, but more of a sketch. The police officers showed this sketch to the victim who answered that it looked like her attacker, but that he had worn glasses. Then one of the policemen drew glasses on the sketch and the victim identified the man. Henry Odom was arrested that same day and a lineup was conducted the following day. There were five black men in the lineup, including the Petitioner, but only the Petitioner wore glasses. Later at the trial the victim testified during cross-examination that the glasses were the outstanding feature about him. Only one or two of the others in the lineup had a mustache. Apparently three of the four men other than the Petitioner were six feet tall, while Petitioner claims that he was only five feet five and one-half inches tall. One of the other four did not have a beard because of his youth, although the victim stated later at time of trial that the assailant had a growth of beard one or two days old. The victim identified Odom as her attacker, although witnesses admit that she was reluctant to do so initially. Then Odom was brought into a room with the victim and he was questioned after which time, the victim also recognized Odom's voice as that of her attacker. She also identified Odom at the time of trial.

■ Petitioner requests that a hearing be held for the issue of the suggestiveness of the identification. At time of trial, counsel for both sides appear to have thoroughly questioned all major participants about the identification. Petitioner's request for a hearing in this regard seems to have as its basis only that the state court made the wrong decision. This Court feels that the facts regarding the identification are sufficiently contained in the trial transcript and that justice would not be served by asking the same participants questions about an incident which occurred 5½ years ago. Consequently, Petitioner's request for a hearing in this matter is denied.

Petitioner was not represented by counsel during the lineup, but he concedes that he was not entitled to such representation. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Also see United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967).

In the *Gilbert* and *Wade* decisions, the Supreme Court discussed the dangers inherent in eyewitness identification. In a subsequent decision, the Court indicated that the display of a single individual's picture may cause misidentification.

"This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or in some way is emphasized."

Simmons v. United States, 390 U.S. 377 at 383, 88 S.Ct. 967 at 971, 19 L. Ed.2d 1247.

The Court then indicated that an original misidentification which could result from viewing a single photograph might "taint" all subsequent identifications.

Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or court room identification." 390 U.S. at 383–384, 88 S.Ct. at 971.

The Court of Appeals for the District of Columbia Circuit has reversed a conviction where the initial identification was based upon the display of a single photograph despite the fact that the witness later identified the Defendant at a preliminary hearing. That Court stated, "The showing of a single photograph is, like all identification procedures involving a single suspect, highly suggestive." Mason v. United States, 134 U.S.App.D. C. 280, 414 F.2d 1176 at 1182 (1969). Other cases have also been reversed for this reason.

The Supreme Court has recently addressed the issue of suggestive identifications and held that unnecessary suggestiveness alone does not require the exclusion of the evidence. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1973). The Court declared:

The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter police from using a less reliable procedure where a more reliable one may be available, not because in every instance the admission of evidence of such a confrontation offends due process (citations omitted). Such a rule would have no place in the present case since both the confrontation and the trial preceded Stovall v. Denno, *supra*, when we first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury (409 U.S. at 190, 93 S.Ct. at 382).

It should be noted that in the instant case the identification of the sketch and the lineup preceded the Supreme Court's decision in Stovall, although the trial was held several months subsequent thereto.

In *Neil,* the Supreme Court continued:

"We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (1409 U.S. at 190, 93 S.Ct. at 382).

In the instant case, the victim spent a considerable amount of time with her assailant. She testified that there was sufficient light for her to be able to observe him. As the Supreme Court noted in *Neil,* another rape case, the victim "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." The length of time between the crime and the confrontation was very brief as the lineup occurred the day after the rape and burglary. The victim was at first reluctant to identify Odom as her assailant, but then made a certain identification. Subsequent to her identification of Odom at the lineup, she listened to Odom's voice and recognized it as that of her assailant. Also at the time of trial she made a positive identification of the Petitioner. The description which she gave to police officers shortly after the rape, although not very complete, apparently was accurate.

For these reasons, the Court feels that under the totality of the circumstances, the identification was reliable even though the confrontation procedure may have been somewhat suggestive. Moreover, the sketch would not be as suggestive as the display of a single photograph.

This is not to say that this Court condones practices of law enforcement officials which result in suggestive identifications. On the contrary, the Court feels that police officials should exert all reasonable efforts to insure that any identification process is fair and just.

For the reasons stated above, the Court grants the Respondent's Motion for Summary Judgment and Judgment is hereby entered for the Respondent.