### SMETANA et v STATE

Ohio Appeals, 9th Dist, Lorain Co

No 765. Decided May 15, 1936

William L. Brooker, Cleveland, and Adams & Adams, Lorain, for plaintiffs in error.

Howard R. Butler, Prosecuting Attorney, Elyria, for defendant in error.

166

## OPINION

By WASHBURN, J.

This is an error proceeding, perfected before the taking effect of the new appellate procedure act.

Plaintiffs in error were jointly indicted on a charge of malicious destruction of property under §12477, GC, and the trial resulted in a verdict and judgment against them.

The principal error complained of is that the trial court refused to permit the plaintiffs in error to testify at the trial that at the time the offense was committed they were at a place so far removed from the place where the offense was committed as to render their participation impossible, or at least improbable. The court in sustaining objection to such evidence acted under the provisions of §13444-20, GC, and exercised the discretion granted by said section.

It is the claim of plaintiffs in error that said section should be construed as applying only to testimony in the nature of an alibi which is offered by defendant's witnesses other than the defendant himself, and that if said section be construed as giving to the trial court, in cases where the notice specified in said section has not been given, the discretionary right to deny the defendant himself to testify to his whereabouts at the time the crime was committed, such section is to that extent unconstitutional, as violative of **Art. I, §10, cf the Ohio Constitution.**

In the brief of plaintiffs in error, it is stated that "the right of plaintiffs in error to testify is a constitutional right, over which the court has no discretionary power".

If such right is a constitutional right, then during the entire history of the state of Ohio defendants have had that right. The first constitution of Ohio (1802) gave to the accused in a criminal prosecution the "right to be heard by himself and his counsel; * * * to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor," and provided that he should not be "compelled to give evidence against himself" (**Art. VIII, §11**); and the present constitution of the state gives to the accused substantially the same rights, as have all of the constitutions of the state.

But notwithstanding that fact, the accused was not permitted to testify in his own behalf during the first half century of the existence of the state, because when the constitution was first adopted it was settled by the common law that a person accused was not a competent witness in his own behalf "because of the very great inducement and temptation to perjure himself." (**Harper v State, 106 Oh St 481**, beginning at bottom of p. 483).

Recognizing the injustice of this rule, the legislature of Ohio, on April 17, 1867, provided that one accused of crime should "at his own request, but not otherwise, be deemed a competent witness." (64 O.L. 260). And in 1869, the legislature provided, among other things, that "No person shall be disqualified as a witness in' any criminal prosecution by reason of his interest in the event of the same, as a party or otherwise." (66 O.L. 308).

Speaking of these laws, our Supreme Court has said that "The obvious purpose of the statute was to confer upon an accused person the right, previously denied him, to testify in his own behalf."
**Tate v State of Ohio, 76 Oh St 537**, at p. 540.

Our conclusion is that the right of one accused of crime to testify in his own behalf is not a constitutional right, but is a right given to him by statute, and that the legislature was clothed with authority to limit and regulate such right at the time it enacted §13444-20, GC. Said section reads as follows:

"Whenever a defendant in a criminal cause shall propose to offer in his defense, testimony to establish an alibi on his behalf, such defendant shall, not less than three days before the trial of such cause, file and serve upon the prosecuting attorney, a notice in writing of his intention to claim such alibi; which notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense; in the event of the failure of a defendant to file the written notice in this section prescribed, the court may, in its discretion, exclude evidence offered by the defendant for the purpose of proving such alibi."

In our judgment, said statute is broad enough to confer upon the trial court the power, in its discretion, to curtail the right of plaintiffs in error to testify, to the extent that such right was curtailed in this

case, and we are of the opinion that, in consideration of the entire record in this case, the trial court did not abuse such discretion.

The record further discloses that after the jury had deliberated for some time they appeared in court, and in the presence of counsel made inquiry of the court with reference to the charge of the court, and at that time the charge of the court, having been reduced to writing, was, without objection, given to the jury, whereupon they resumed deliberations.

Thereafter, after 10 o'clock that evening, the jury again appeared in court, in the presence of counsel, and reported that they had not agreed upon a verdict; and the court, after cautioning them, permitted them to separate and go to their respective homes; directing them, of course, to return the next morning and resume deliberations.

A general exception was taken to this procedure, and in a supplemental brief it is claimed that the permitting of the jurors to go to their homes for the night during the adjournment of the court was error.

The court took such action on the theory that §13448-1, GC, gave authority for so doing, and it is the contention of the plaintiffs in error that said section does not clothe the court with discretionary power to permit a separation of the jury after the case is finally submitted to them, even though the jury is properly cautioned by the court.

The section in question is somewhat ambiguous, but its meaning, so far as this question is concerned, seems to us to be apparent from a consideration of the history of the legislation on that subject.

The legislature undertook to establish a code of criminal procedure for the state of Ohio in 66 O.L. 287. Said act is divided into chapters concerning the arrest, examination and commitment to bail, the proceedings of the grand jury, indictments and process thereon, the proceedings between the indictment and trial, the trial and proceedings incident thereto, and "the verdict, and judgment and proceedings thereon"; and under the latter title it was then provided that the proceedings provided by law in civil cases as to the conduct of the jury, the admonition of the court and the manner of returning the verdict, so far as such proceedings were applicable, unless otherwise provided, should govern, and it was specially provided that in the trial of felonies the jury should not be permitted to separate after being

sworn until discharged, and as to misdemeanors they should not be permitted to separate after receiving the charge of the court until discharged.

The section making such provision was amended in 68 O.L. 5, which omitted any reference to the proceedings provided in civil cases, and provided that "When a case is finally submitted to the jury, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict, or are discharged by the court." It also contained a provision that if the jury were permitted to separate during the trial, they should be admonished by the court. Plainly this last provision had reference to separations of the jurors before final submission, and this provision is still in the statutes relating to criminal procedure, being §13443-17, GC.

In the revision of the statutes of 1880, criminal procedure was set forth in chapters entitled substantially the same as in 66 O.L. 287, and under the chapter relating to "verdicts, and judgments and proceedings thereon," it was provided, in §7312, R. S., that when a case was finally submitted the jurors should be kept together in some convenient place, under the charge of an officer, until they agreed upon a verdict or were discharged, and if they were permitted to separate during the trial, they should be properly admonished by the court.

When the General Code was adopted, the same titles were retained, and substantially the same provisions were made in §13688 GC. The general code on the subject of criminal procedure was amended in 113 O.L. 123, and there substantially the same arrangement as to titles was followed. The provision of §13688, GC, relating to separation of jurors during trial was placed under the chapter relating to "Trial; Juries" as §13443-17, GC, and that part of §13688, GC, relating to separation of jurors thereafter was retained under the chapter relating to "Verdict" as §13448-1, GC, which section is entitled "Keeping and conduct of jury after case submitted," and after the provision for keeping the jury together after the cause is finally submitted, there was added a proviso, "that, at any stage of the trial, or after submission, the court may, at its discretion, permit the jurors to separate during the adjournment of court over night, under proper cautions and supervision of an officer."

It is therefore apparent that, as the law was before a more recent amendment, hereinafter referred to, notwithstanding the requirement that the jurors be kept together in a convenient place, the court,

at its discretion, might permit such a separation of the jurors after final submission as would still permit them to be under "supervision of an officer."

It is quite apparent that this provision was made because of the advent of women as jurors. The section as then amended permitted the court to direct the officer to take the jurors to a hotel and occupy therein separate rooms, he being in charge of and having supervision of them.

In the most recent amendment (115 O. L. 531), the provision relating to separation after final submission and requiring the jurors to be kept together in a convenient place, was modified so as to authorize the court, at its discretion, to "permit the jurors to separate * * * under proper cautions or under supervision of an officer or officers." It therefore seems to us plain that the discretion of the court can be exercised by requiring the jurors to be under the supervision of an officer or, upon due caution, permitting them to go to their homes and return the next morning.

It it were not for the further provision added to said section in the last five lines thereof, we would think there could be no question about the intention of the legislature in enacting the latest amendment of said section. In that provision, which has application to misdemeanors, as distinguished from felonies, the court is authorized to permit the jury to separate "during deliberations," while in the proviso we are construing, which is the first one, the expression "during their deliberations" is absent. But according to the chapter in which said section appears, and according to the title thereof, it relates only to the subject of the keeping and conduct of a jury "after the case is submitted" (there being, as has been said, a specific statute on the subject of the separation of jurors "during the trial"—§13443-17, GC), and in the proviso with reference to misdemeanors the words "during their deliberations" were merely used as another means of expressing what had been theretofore more indefinitely expressed in the first proviso relating to felonies.

We find no error or abuse of discretion in the conduct of the trial court with reference to said matter.

Finding no prejudicial error in the record in this case, the judgment is affirmed.

FUNK, PJ, and STEVENS, J, concur in judgment.