* Pursuant to Circuit Rule 16, this opinion has been circulated among all judges of this court in regular active service because it creates a conflict between the Seventh and Tenth Circuits. No judge, except Judge Richard A. Posner, voted to hear the matter *en banc*.

Judge Posner would grant a hearing *en banc* to enable the full court to correct what he considers a serious error in judicial technique committed by the panel: namely, holding a statute unconstitutional and thereby creating a conflict between circuits in a case where the constitutional issue need not be decided because, the alleged error being harmless, the panel's resolution of the issue cannot affect the outcome of the case.

**Luis Albert ALICEA,**
**Petitioner-Appellant,**

v.

**John R. GAGNON, Superintendent, and the Attorney General of Wisconsin, Respondents-Appellees.**

No. 81–2005.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1981.

Decided April 14, 1982.*

Mark Lukoff, Wis. Public Defender, Milwaukee, Wis., for petitioner-appellant.

Jerome S. Schmidt, Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before SPRECHER and BAUER, Circuit Judges, and ROSZKOWSKI,** District Judge.

BAUER, Circuit Judge.

On November 17, 1978, after a jury trial in the Circuit Court of Milwaukee County, Wisconsin, petitioner Luis Alicea was convicted of armed and masked robbery in violation of Wis.Stat. §§ 943.32(1)(b), 943.-32(2), & 946.62 (1977). On October 15, 1979, the trial court denied Alicea's motion for a new trial. The Wisconsin Court of Appeals affirmed Alicea's conviction in an unpublished decision. *State v. Alicea*, 97 Wis.2d 759, 295 N.W.2d 835 (1980). Thereafter, Alicea sought discretionary review in the Wisconsin Supreme Court, which refused to consider his case. *State v. Alicea*, 95 Wis.2d 748, 293 N.W.2d 926 (1980).

Having exhausted his state remedies, petitioner turned to the federal courts for relief. Judge Terence T. Evans of the United States District Court for the Eastern District of Wisconsin denied Alicea's writ of habeas corpus petition on May 27, 1981. Alicea now appeals Judge Evans' decision. We affirm.

## Facts

Shortly before noon on April 5, 1978, Robert Behling went to apply for a job at a

** The Honorable Stanley J. Roszkowski, Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

Sentry Food Store on south 76th Street in Milwaukee. While crossing the store's parking lot, Behling noticed a green Mustang parked facing the wrong direction in a no parking zone a few feet from the store's entrance. The car had a damaged hood and missing grille. Behling also noticed that the occupant of the car was dressed in coveralls. Behling continued past the car, entered the store, and obtained an employment application at the front counter.

While Behling was completing the application, a short, stocky, broad-shouldered man wearing coveralls, yellow gloves, and a green and red ski mask entered the store, approached assistant manager Richard Klingbeil, and said, "This is for real, I want the money out of the drawers." Klingbeil found the man most persuasive and immediately escorted him to the store's office, where Beverly Konzcal was working. Konczal also found the drawn pistol quite convincing and quickly placed $1040 in the man's gym bag. The masked man, whose physical description matched petitioner's,[1] left the office, ran past Behling standing at the counter with his job application, and exited the store.

Klingbeil then rushed to the store's backdoor and watched a green Mustang speed from the parking lot, but was unable to read the car's bent rear license plate. Behling, Konczal, and Klingbeil later supplied matching descriptions of the robber's height, build, and attire, with Behling noting that the same coveralls were worn by the robber and the man Behling had observed earlier in the parked green Mustang.

Approximately one hour later, Lieutenant Thomas Perlewitz located a green Mustang fitting the description of the car used in the Sentry armed robbery. Closer inspection of the vehicle revealed its damaged front end and bent rear license plate. Underneath the car Perlewitz discovered coveralls and a green and red ski mask, inside of which was a pair of yellow gloves. The car's overnight parking permit and license plates were issued to petitioner and petitioner's live-in girlfriend, Donna Sarnowski, respectively.

Later the same day, Sentry job applicant Behling positively identified the Mustang by its damaged front end. He also selected a picture of Kelmit Alicea, petitioner's brother, from a collection of 600 police photographs. Although the collection did not include a picture of petitioner, Behling did state that Kelmit Alicea closely resembled the man Behling had seen sitting in the Mustang in the Sentry parking lot.[2]

The following day police confronted petitioner's girlfriend, Sarnowski, with the coveralls found under the Mustang. She told Detective James Metz, "Those are Louie's coveralls." She also told police that some of the other items discovered under the Mustang belonged to petitioner or were similar to items petitioner owned.

The foregoing evidence was adduced by the prosecution at trial, along with numerous government exhibits. Petitioner sought to testify in his defense that he was at home and received telephone calls at the time the robbery occurred. The government objected to the admission of this alibi testimony based on the trial court's prior grant of the government's motion *in limine* to exclude alibi testimony. The trial court sustained the prosecution's objection, ruling that petitioner could not testify in his own defense about his alibi because petitioner had failed to give notice to the state as required by Wisconsin's notice-of-alibi statute. Nevertheless, Alicea did manage to testify that on the morning of the robbery he was at home at 11:45 a. m., the time the crime was committed. He also denied committing the robbery. The jury, however, was not instructed as to his alibi defense and Alicea was convicted.

---

1. Petitioner was a powerfully built weight-lifter who could lift 650 pounds, a substantial amount for a man of any size, particularly one five foot three inches tall.

2. On April 10, 1978, Behling viewed petitioner and three other Hispanic men in a line-up and identified petitioner as the man in the Sentry parking lot immediately prior to the robbery. This identification was not revealed at trial, however, because the trial court had granted a pretrial defense motion to suppress.

## Background

Petitioner's principal argument poses a constitutional challenge to the state trial court's application of Wisconsin's notice-of-alibi statute, Wis.Stat. § 971.23(8) (1977).[3] Alicea claims that the trial court violated his constitutional right to testify and to present a defense under the fifth, sixth, and fourteenth amendments to the United States Constitution when it excluded his alibi testimony simply because he failed to notify the prosecution that he intended to raise such a defense. The government, on the other hand, contends that a court may preclude either a defendant or a defense witness from giving alibi testimony if the defendant fails to comply with the statute's notice requirements because the statute serves the legitimate state purposes of uncovering truth and preventing surprise. In the government's view, exclusion of all alibi evidence is the only adequate remedy for noncompliance with the statute.

We begin our analysis of this question of first impression in this Circuit by briefly reviewing the history and purposes of alibi-notice statutes. Although pretrial discovery in criminal cases was virtually unknown until fairly recently, *see generally* Everett, *Discovery in Criminal Cases—In Search of a Standard*, 1964 Duke L.J. 477, one area long subject to discovery has been the alibi defense. Indeed, American alibi-notice statutes trace their antecedents to a Scottish law enacted in 1887. *See* Epstein, *Advance Notice of Alibi*, 55 J.Crim.L.C. & P.S. 29, 29 (1964). Following a seminal 1920 article in which Professor Robert Millar criticized alibi defenses as "one of the main avenues of escape of the guilty" and then proposed an alibi-notice rule modeled after Scotland's,[4] states began as early as 1927 to impose restrictions on raising an alibi defense absent notice to the prosecution. Today federal and state rules governing notice of alibis and other defenses are common.[5]

The legitimate state objectives furthered by alibi-notice laws are obvious. First and foremost, by requiring the accused to reveal his alibi defense in advance, the element of surprise is greatly reduced and the fairness of the adversary system thereby enhanced. *See Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973). Second, the likelihood of government investigation following advance notice discourages defendants from fabricating alibis, a deterrent that is lost when alibis can be introduced without warning during the trial.

---

**3.** The statute provides:

(8) Notice of alibi.

(a) If the defendant intends to rely upon an alibi as a defense, the defendant shall give notice to the district attorney at the arraignment or at least 15 days before trial stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known. If at the close of the state's case the defendant withdraws the alibi or if at the close of the defendant's case the defendant does not call some or any of the alibi witnesses, the state shall not comment on the defendant's withdrawal or on the failure to call some or any of the alibi witnesses. The state shall not call any alibi witnesses not called by the defendant for the purpose of impeaching the defendant's credibility with regard to the alibi notice. Nothing in this section may prohibit the state from calling said alibi witnesses for any other purposes.

(b) In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise.

(c) The court may enlarge the time for filing a notice of alibi as provided in par. (a) for cause.

(d) Within 10 days after receipt of the notice of alibi, or such other time as the court orders, the district attorney shall furnish the defendant notice in writing of the names and addresses, if known, of any witnesses whom the state proposes to offer in rebuttal to discredit the defendant's alibi. In default of such notice, no rebuttal evidence on the alibi issue shall be received unless the court, for cause, orders otherwise.

**4.** Millar, *The Modernization of Criminal Procedure*, 11 J.Crim.L. & C. 344, 350 (1920). *See also* Millar, *The Statutory Notice of Alibi*, 24 J.Crim.L. & C. 849, 849 (1934).

**5.** Representative state rules are collected in 6 J. Wigmore, *Evidence in Trials at Common Law* § 1855(b) (rev. ed. Chadbourne 1976). Their federal counterparts are rules 12.1 and 12.2, Fed.R.Crim.P.

*See* Epstein, *Advance Notice of Alibi*, 55 J.Crim.L.C. & P.S. 29, 31 (1964). Finally, notice rules promote the orderly administration of justice by preventing unnecessary continuances and by eliminating trials in those instances where post-notice investigation reveals an alibi's merit. *Id.* at 32.

Despite their relative longevity and legitimate purposes, alibi-notice provisions have come under attack on constitutional grounds in recent years. For example, in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court upheld Florida's alibi-notice statute against a charge that it violated the defendant's privilege against compelled self-incrimination under the fifth and fourteenth amendments. The Court rejected the constitutional objection, noting that under Florida law the defendant had an unfettered choice to present or abandon his alibi defense.

A few years later the Supreme Court decided *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), in which Oregon's · alibi-notice statute was struck down. Neither the statute nor Oregon's criminal rules granted the defendant reciprocal discovery opportunities against the state. In effect, the Oregon scheme required the defendant to divulge his alibi evidence while simultaneously subjecting his evidence to surprise refutation by the state. The Supreme Court considered the lack of discovery reciprocity fundamentally unfair and therefore held the statute unconstitutional on fourteenth amendment due process grounds.

We have had occasion to review questions concerning similar statutes enacted by the states within the Seventh Circuit. *See*

*Bruce v. Duckworth*, 659 F.2d 776 (7th Cir. 1981) (Indiana); *Allison v. Gray*, 603 F.2d 633 (7th Cir. 1979) (Wisconsin); *United States ex rel. Hairston v. Warden*, 597 F.2d 604 (7th Cir.), *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979) (Illinois). But neither our decisions nor those of the Supreme Court have resolved the precise issue raised by Alicea regarding the constitutionality of applying an exclusion sanction against the testimony of the defendant himself for failure to provide proper notice. *See Wardius v. Oregon*, 412 U.S. at 472 n.4, 93 S.Ct. at 2210 n.4;· *Williams v. Florida*, 399 U.S. at 83 n.14, 90 S.Ct. at 1897 n.14; *Allison v. Gray*, 603 F.2d at 634 n.1.[6]

Although commentators agree that excluding a defendant's alibi testimony for lack of notice should be unconstitutional,[7] few courts have reached the constitutional issue. Instead, most courts have relied on narrow statutory construction or application to guide them through this area. In the earliest case to consider the problem, *People v. Rakiec*, 289 N.Y. 306, 45 N.E.2d 812 (1942), the New York Court of Appeals compared two state statutes: one granting a defendant the right to testify in his own behalf in all cases, the other precluding that right when advance notice of alibi was lacking. The *Rakiec* court resolved this inconsistency on statutory construction grounds and held the preclusion sanction improper. As support for its position the court pointed out that the alibi-notice statute's purpose was to prevent false alibis by allowing government investigation upon notice of the defense. This investigatory function was served with respect to defense witnesses, but not with respect to the defendant because the state always investigated him

**6.** A separate but related topic is the constitutionality of excluding the testimony of defense witnesses *other than the defendant* for noncompliance with an alibi-notice statute. That issue is currently pending before this court in *United States ex rel. Veal v. Wolff*, 529 F.Supp. 713 (N.D.Ill.1981), *appeal docketed*, No. 81–2984 (7th Cir. Dec. 17, 1981). The same issue was also raised in *Hackett v. Mulcahy*, 493 F.Supp. 1329 (D.N.J.1980). *Cf. Ronson v. Commissioner of Correction*, 604 F.2d 176 (2d Cir. 1979) (per curiam) (advance-notice-of-in-

sanity statute upheld). We express no opinion on the merits of that question.

**7.** *See* Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind.L.Rev. 711, 830–41 (1976); Westen, *The Compulsory Process Clause*, 73 Mich.L.Rev. 71, 137–39 (1974); Note, *The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense*, 81 Yale L.J. 1342, 1364 (1972).

as part of its case, regardless of any alibi.[8] The *Rakiec* court found additional support for its conclusion in the New York rule that in the absence of express language no presumption should arise that the legislature intended a new statute to defeat the main purpose of an existing statute governing the same subject.

A somewhat different approach was taken by the Michigan Supreme Court in *People v. Merritt*, 396 Mich. 67, 238 N.W.2d 31 (1976). At the time of Merritt's conviction, Michigan's alibi-notice statute granted trial courts discretion to determine what circumstances warranted preclusion of a defendant's alibi testimony. During his trial Merritt sought to testify concerning his whereabouts at the time of the crime and attempted to introduce corroborative alibi testimony through four defense witnesses. The trial judge refused to admit the evidence because the four-day statutory requirement of alibi notice before trial had not been met. The trial court made this ruling despite Merritt's explanation that noncompliance with the statute occurred not through any fault of his own, but because of his attorney's illness.

The Michigan Supreme Court rested its reversal of the trial court's decision to exclude Merritt's alibi testimony on two bases. First, the supreme court held that the trial court's statutorily conferred discretion to impose the preclusion sanction against the defendant was limited to egregious cases. This limitation was justified by the sanction's severity and Michigan precedent. In the *Merritt* court's opinion, it was improper to exclude the alibi defense where neither abuse of the defense by the defendant nor prejudice to the government's case had been shown.[9]

A second reason for proscribing the preclusion sanction as applied to Merritt derived from statutory construction considerations analogous to those enunciated in the *Rakiec* decision. Michigan's statute[10] provided that "the [trial] court may in its discretion exclude *evidence* offered by [the] defendant for the purpose of establishing an alibi." 396 Mich. at 83, 238 N.W.2d at 38 (emphasis added). The Michigan Supreme Court construed "evidence" in light of the statute's twin purposes—preventing trial delay and promoting pretrial investigation—and the defendant's right to testify pursuant to a different Michigan statute and, perhaps, the United States and Michigan Constitutions. Recognizing the Michigan Legislature's power to restrict a defendant's right to testify, the court was unwilling to qualify that right absent an unambiguous legislative command to do so. The statutory and constitutional directives favoring admission of such testimony together with the lack of purpose served by the alibi-notice statute as applied to Merritt convinced the court that Merritt should

---

**8.** Similar analysis was employed by the South Dakota Supreme Court in *State v. Hibbard*, 273 N.W.2d 172 (S.D.1978), and by the Iowa Supreme Court in *State v. Stump*, 254 Iowa 1181, 119 N.W.2d 210, *cert. denied*, 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963), where preclusion of the respective defendants' alibi testimony was held improper.

**9.** The Ohio Supreme Court adopted a similar view in *State v. Smith*, 50 Ohio St.2d 51, 362 N.E.2d 988 (1977), holding that exclusion of alibi testimony pursuant to Ohio's alibi-notice rule constituted an abuse of discretion where the admission of such evidence was necessary to insure a fair trial and there was no showing of bad faith by the defendant or prejudice to the prosecution. *Accord, Bradford v. State*, 278 So.2d 624 (Fla.1973). The *Smith* and *Bradford* cases, however, concerned excluded testimony of witnesses other than the defendants.

The court in *State v. Francis*, 128 N.J.Super. 346, 320 A.2d 173 (1974), also examined an alibi-notice statute granting the trial court discretion to exclude alibi testimony. Although the *Francis* court emphasized the trial judge's duty to consider the unfair surprise to the state caused by the lack of alibi notice and whether such surprise could be redressed by a reasonable continuance, it upheld the exclusion of Francis' testimony as a sanction within the trial court's discretion. No statutory or constitutional rationale was furnished for this result other than mere citation to New Jersey's alibi rule.

**10.** The court noted that subsequent to Merritt's trial the Michigan Legislature amended the statute to make preclusion mandatory. 396 Mich. at 74–75 n.1, 238 N.W.2d at 34 n.1.

have been permitted to introduce his own alibi testimony. Therefore, the *Merritt* court decided "evidence" as used in Michigan's alibi-notice statute did not include the defendant's testimony.

In contrast to this flexible approach emphasizing the circumstances surrounding a defendant's failure to supply notice and the purposes underlying alibi-notice laws, a number of state courts have adhered to rigid interpretations of their notice statutes and have refused to admit defendants' alibi testimony absent proper notice, regardless of the reasons for noncompliance. The first to do so was the Kansas Supreme Court in *State v. Rider*, 194 Kan. 398, 399 P.2d 564 (1965), *overruled on other grounds, Talley v. State*, 222 Kan. 289, 564 P.2d 504 (1977). The Kansas court noted that the accused's common-law incompetency to testify in his own behalf had been abrogated by the legislature. Since the legislature established the accused's right to testify, the court reasoned that the legislature could also restrict it. The *Rider* court therefore considered the alibi-notice statute a permissible restriction.

Other state courts which have allowed preclusion of a defendant's testimony as a sanction also have noted their legislature's power to limit a defendant's right to testify. *See, e.g., Smetana v. Smith*, 22 Ohio L.Abs. 165, 166, *appeal dismissed*, 131 Ohio St. 329, 2 N.E.2d 778 (Ct.App.1936); *State v. Wardius*, 6 Or.App. 391, 397, 487 P.2d 1380, 1383 (1971), *rev'd on other grounds, Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *State ex rel. Simos v. Burke*, 41 Wis.2d 129, 133–34, 163 N.W.2d 177, 179 (1968). Of particular interest is the *Simos* case because it construed the same alibi-notice statute attacked by petitioner in this appeal.

Unlike the previously discussed state decisions, *Simos* directly confronted the constitutionality of excluding a defendant's testimony as a sanction. The *Simos* court first noted that the accused's right to be heard in all criminal cases was guaranteed by Art. I, § 7 of the Wisconsin Constitution.

The court then stated that even assuming the defendant's right to testify as a witness in his own behalf under either or both the United States and Wisconsin Constitutions, it did not follow that all procedural conditions upon that right were forbidden. 41 Wis.2d at 136, 163 N.W.2d at 180.

The Wisconsin Supreme Court presented the following analysis:

When any witness takes the stand, he swears or affirms that he will tell the truth, the whole truth and nothing but the truth. What is constitutionally protected is the right of a defendant to testify truthfully in his own behalf. An alibi is not one of several alternative defenses that can be simultaneously asserted. If what the statute terms an alibi is founded in truth and in fact, the defendant was not present to commit the offense charged. If this is the situation, the defendant suffers no prejudice by the requirement of advance notice of intention to establish such fact. If we are discussing the right of a defendant to defer until the moment of his testifying the election between alternative and inconsistent alibis, we have left the concept of the trial as a search for truth far behind. Where this situation was presented to this court, we rejected the claimed right of a defendant to abandon the alibi of which he had given notice and substitute a new and different one at the time of trial. Where there is even a pretrial change of alibi, this court has permitted cross-examination and introduction of the initial alibi notice as bearing upon an issue raised by the choice and change of mind of the defendant. These decisions, and the statute on which they are based, do not limit in any way the right of a defendant to testify truthfully in his own behalf. The condition of prior notice as to alibi testimony, like the test as to materiality and relevancy, does not invade the right of a defendant to testify in his defense.

*Id.* at 137–38, 163 N.W.2d at 181 (footnotes omitted).[11] This passage was cited with

---

11. In addition, the *Simos* court offered the following discussion:

approval and adopted by the court in *State v. Wardius*, 6 Or.App. 391, 397–98, 487 P.2d 1380, 1383–84 (1971), *rev'd on other grounds, Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).

As is apparent from our extended analysis of United States Supreme Court and state cases examining alibi-notice laws, none of these decisions except *Simos* addressed the constitutional dimensions of applying the preclusion sanction against a defendant. For the reasons expressed below, we decline to follow the position adopted in *Simos*.

### Federal Constitutional Considerations

As a predicate to our constitutional discussion, it is important to emphasize the particular posture of this case. Review of a state prisoner's habeas corpus petition is premised upon an underlying state deprivation of a federal right found in the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3) (1976). Because Alicea offered no alibi evidence other than his own testimony, the limited scope of our habeas review prevents us from considering his challenges to Wisconsin's notice rule unless Alicea first can establish a federal constitutional right to testify in his own behalf. Absent this constitutional basis, we must conclude that petitioner's right to testify under the laws of Wisconsin has been permissibly qualified by

> If a criminal trial is viewed as a draw poker game with all cards to be held close to the chest until played, [alibi notice] can be seen as requiring a tipping of one's hand in advance. However, if a criminal trial is viewed as a search for the truth, with every protection provided for investigation and preparation and to insure against the conviction of the innocent, notice requirements forward the purpose of the process. Viewed thusly, the notice of alibi statute is not only justified as protecting the state from fraudulent, surprise defenses presented without time for investigation of their merits, but also as consistent with "The modern trend in discovery ... to broaden access to material facts and reduce belated surprise." We find no infringement or abridgment of the defendant's Fifth Amendment rights in the notice of alibi statute.

Wisconsin's notice rule as construed by the Wisconsin Supreme Court in *Simos*.

The United States Supreme Court has never expressly held that a defendant in a criminal trial has a constitutional right to testify in his own behalf. Given the fundamental nature of such a right, the absence of Supreme Court precedent directly on point seems surprising until it is recalled that a criminal defendant was incompetent to testify in his own behalf at common law.[12] Because this common-law incompetency has been abrogated by federal and state statutes in every jurisdiction in the United States,[13] as a practical matter a defendant's right to testify is rarely questioned, which perhaps explains the dearth of Supreme Court authority on the subject.

Generally speaking, however, the Supreme Court seems to favor constitutional recognition of a defendant's right to testify. For example, in *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the Supreme Court noted that certain rights are basic to our system of jurisprudence and thus within the ambit of the due process clause, including, "*as a minimum*, a right to examine [adverse] witnesses ..., *to offer testimony*, and to be represented by counsel." *Id.* at 273, 68 S.Ct. at 507 (emphasis added). Although the reference was merely dictum, it suggests the significance of the right to testify.

41 Wis.2d at 136, 163 N.W.2d at 180 (footnote omitted). *Accord, Lake v. State*, 257 Ind. 264, 269, 274 N.E.2d 249, 252–53 (1971).

**12.** The primary reason for this common-law rule was that the accused, as an interested party fearing punishment, would perjure himself. The defendant's testimony was therefore excluded as unreliable. *See generally* Hammerman, *A Criminal Defendant's Constitutional Right to Testify—The Implications of United States ex rel. Wilcox v. Johnson*, 23 Vill.L.Rev. 678 (1978); Popper, *History and Development of the Accused's Right to Testify*, 1962 Wash. L.Q. 454.

**13.** The federal statute governing this point is 18 U.S.C. § 3481 (1976). Pertinent state laws are collected in Note, *Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify*, 3 Hastings Const.L.Q. 517, 541–42 (1976).

Observations in more recent Supreme Court decisions comport with the tenor of *Oliver.* In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Court stated as a general proposition that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Id.* at 225, 91 S.Ct. at 645.[14] The *Harris* pronouncement, though cast in terms of a "privilege," makes clear the constitutional underpinnings of the right to testify. A year later, in *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the Court remarked that "[w]hether the defendant is to testify is an important tactical decision *as well as a mat-* ter of constitutional right,*" id.* at 612, 92 S.Ct. at 1895 (emphasis added), indicating the opportunity to testify is not merely a privilege, but a right. And in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court listed a defendant's right to testify in his own behalf as one of several constitutional rights "essential to due process of law in a fair adversary process," *id.* at 819 n.15, 95 S.Ct. 2533 n.15, in effect elevating the right to fundamental constitutional right status. In any event, read together these statements seem to take for granted the constitutional basis of the right to testify.[15]

**14.** This passage was recently quoted with approval in *Jenkins v. Anderson,* 447 U.S. 231, 237, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980).

**15.** Similarly, in his dissent in *United States v. Salvucci,* 448 U.S. 83, 95, 100 S.Ct. 2547, 2555, 65 L.Ed.2d 619 (1980), Justice Marshall voiced his concern that the majority holding might force a defendant to relinquish "his constitutional right to testify in his own defense." *Id.* at 96, 100 S.Ct. at 2555. Despite these recurring intimations that a defendant's right to testify is constitutionally based, the Court in *United States v. Grayson,* 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–2618, 57 L.Ed.2d 582 (1978), carefully avoided express recognition of such a constitutional footing. Grayson's argument, in the Court's words, was "that judicial consideration of his conduct at trial impermissibly 'chills' a defendant's statutory right ... and *perhaps* a constitutional right to testify on his own behalf ...." *Id.* at 54, 98 S.Ct. at 2617 (emphasis added). The Court noted that the right to testify was "guaranteed by law," but failed to identify its exact source. Justice Stewart, however, was emphatic as to the basis of the right to testify. In dissent he stated:

The accused in a federal case has an absolute constitutional right to plead not guilty, and if he does elect to go to trial an absolute statutory right to testify in his own behalf. 18 U.S.C. § 3481 (1976 ed.). I cannot believe that the latter is not also a constitutional right, for the right of a defendant under the Sixth and Fourteenth Amendments "to make his defense," *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, surely must encompass the right to testify in his own behalf. *See Ferguson v. Georgia,* 365 U.S. 570, 602 (Clark, J., concurring).

*Id.* 438 U.S. at 56 n.2, 98 S.Ct. at 2618 n.2 (Stewart, J., dissenting).

A number of lower federal courts also have couched the right to testify in constitutional terms, *see, e.g., Winters v. Cook,* 489 F.2d 174, 179 (5th Cir. 1973) (dicta); *United States v. McCord,* 420 F.2d 255 (D.C.Cir.1969); *United States v. Bentvera,* 319 F.2d 916 (2d Cir.), *cert. denied sub nom. Ormento v. United States,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); *Poe v. United States,* 233 F.Supp. 173 (D.D.C. 1964), *aff'd,* 352 F.2d 639 (D.C.Cir.1965), as have several state courts. *See, e.g., Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *State v. Noble,* 109 Ariz. 539, 514 P.2d 460 (1973); *People v. Robles,* 2 Cal.3d 205, 466 P.2d 710, 85 Cal.Rptr. 166 (1970); *People v. Mosqueda,* 5 Cal.App.3d 540, 85 Cal.Rptr. 346 (1970); *People v. Knox,* 58 Ill.App.3d 761, 16 Ill.Dec. 182, 374 N.E.2d 957 (1978); *Pigg v. State,* 253 Ind. 329, 253 N.E.2d 266 (1969) (dicta); *People v. Farrar,* 36 Mich.App. 294, 193 N.W.2d 363 (1972); *People v. Rolston,* 31 Mich.App. 200, 187 N.W.2d 454 (1971); *People v. Hall,* 19 Mich.App. 95, 172 N.W.2d 473 (1969); *State v. Rosillo,* 281 N.W.2d 877 (Minn.1979); *Ingle v. State,* 92 Nev. 104, 546 P.2d 598 (1976); *State v. Albright,* 96 Wis.2d 122, 291 N.W.2d 487, *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980); *contra, Young v. Ricketts,* 242 Ga. 559, 250 S.E.2d 404 (1978), *cert. denied sub nom. Young v. Zant,* 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979); *State v. McKenzie,* 17 Md.App. 563, 303 A.2d 406 (1973); *State v. Hutchinson,* 458 S.W.2d 553 (Mo.1970) (en banc).

The Ninth Circuit has yet to decide whether the right to testify is of constitutional magnitude. In *Yates v. United States,* 227 F.2d 844 (9th Cir. 1955), *aff'd in part, rev'd in part,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957), the court, in different portions of its opinion, characterized the opportunity to testify as both a right and a privilege. In *Fowle v. United States,* 410 F.2d 48 (9th Cir. 1969), the Ninth Circuit seemed to accept the idea that the right to testify was constitutionally required, relying on Justice Clark's concurrence in *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Subsequently, in *United States v. Ives,* 504 F.2d 935 (9th Cir. 1974), *vacated on*

In contrast, this Court in *Sims v. Lane*, 411 F.2d 661 (7th Cir.), *cert. denied*, 396 U.S. 943, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969), expressed the view that "[i]n the federal courts, the privilege of an accused to testify in his own defense is merely statutory, abrogating the common law rule of incompetence." *Id.* at 664. Our reluctance to recognize a constitutional mandate for this right stemmed, at least in part, from the absence of any cases brought to our attention holding that a defendant in a state court possessed a federal constitutional right to testify. The Supreme Court cases reviewed above, none of which were cited in *Sims* and all of which—save *In re Oliver* —were decided after *Sims*, lead us to conclude that *Sims* was wrongly decided to the extent that it failed to acknowledge a federal constitutional basis for a defendant's right to testify in his own behalf.[16]

Further evidence that the precedential force of *Sims* on this point has eroded can be found in several recent federal cases. In *Ashe v. North Carolina*, 586 F.2d 334 (4th Cir. 1978), *cert. denied*, 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979), the Fourth Circuit cited *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), as establishing a defendant's constitutional right to testify in his own behalf. 586 F.2d at 336 n.3. Prior to *Ashe* the Fourth Circuit had taken a more equivocal position in *United States v. Looper*, 419 F.2d 1405 (4th Cir. 1969). There the court noted that a criminal defendant's ancient common-law testimonial incompetency had been altered in the modern era. However, the *Looper* court failed to delineate the scope of the right to testify, pointing out only that the right had been given a constitutional characterization in one case and certainly was statutorily guaranteed in any event. The court then employed the term

"privilege" to describe the right, thereby avoiding the question of the right's constitutional underpinnings. Thus, *Ashe* seems to clarify the Fourth Circuit's view that a constitutional basis for the right to testify exists.

A more complete discussion of the constitutional foundation of the right to testify appears in *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir. 1977). In well-reasoned dicta, the Third Circuit reviewed various state and federal cases favoring constitutional stature for the right to testify and then quoted an excerpt from the district court's unpublished opinion criticizing our analysis in *Sims*. The court of appeals noted that the district court's pronouncement of a criminal defendant's right to testify in his own behalf appeared to reflect fairly the recognition of such a right by the federal courts, but stopped short of adopting the lower court's view because a different ground existed for granting Wilcox habeas corpus relief. *Id.* at 119. Nevertheless, we think the Third Circuit will adopt the view espoused in *Wilcox* when the question next arises.

Particularly persuasive authority that *Sims* is obsolete is Judge Godbold's dissent in *Wright v. Estelle*, 572 F.2d 1071, 1074 (5th Cir.) (en banc) (Godbold, J., joined by Goldberg and Tjoflat, JJ., dissenting), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). In his view, the right to testify originates in the fifth amendment due process requirement of a fair trial as well as in the sixth amendment guarantees of the defendant's right to meet and deny accusations against him, his right to present evidence, and his right to present witnesses on his behalf, the last of which includes the right of the defendant himself to take the stand and testify. *Id.* at 1074–76 and authorities cited therein. In addition to his

other grounds, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), the court noted the possible constitutional dimension of the right to testify but found it unnecessary to decide the issue, choosing instead to label the presentation of such testimony a "privilege." 504 F.2d at 939. More recently, in *United States v. Panza*, 612 F.2d 432 (9th Cir. 1979), *cert. denied*, 447 U.S.

925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980), the Ninth Circuit again failed to resolve the issue, noting simply that a defendant's right to testify "has become a basic feature of our law." 612 F.2d at 438.

**16.** We express no opinion on the validity of other aspects of *Sims*.

discussion of the recent Supreme Court cases we have reviewed above, Judge Godbold's penetrating analysis is especially well-supported on the fifth amendment ground by Justice Clark's concurrence in *Ferguson v. Georgia*, 365 U.S. 570, 601–03, 81 S.Ct. 756, 772–73, 5 L.Ed.2d 783 (1961), which Judge Godbold cited, and on the sixth amendment grounds by Justice Stewart's dissent in *United States v. Grayson*, 438 U.S. 41, 56 n.2, 98 S.Ct. 2610, n.2, 57 L.Ed.2d 582 (1978),[17] which was published a few weeks after Judge Godbold's dissent.

In light of the developments since our decision in *Sims*, we are convinced that *Sims* must be partially overruled. If the search for truth is to have meaning, surely the most important figure in the controversy, whose very freedom hangs in the balance, must have a right to participate directly. We believe the fifth, sixth, and fourteenth amendments require no less. We therefore hold that a criminal defendant has a constitutional right to testify in his own behalf under the fifth, sixth, and fourteenth amendments.

### Striking a Balance Between Federal Constitutional Rights and State Procedural Rules

Having established petitioner's constitutional right to testify in his own behalf, we must next consider whether the procedural limitations upon that right under Wisconsin's alibi-notice statute are constitutionally permissible. The appropriate analysis of this question is set forth in the Supreme Court's decisions in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), as well as in our recent decisions in *Parisie v. Greer*, 671 F.2d 1011 (7th Cir. 1982), and *McMorris v. Israel*, 643 F.2d 458 (7th Cir. 1981), cert. denied, —— U.S. ——, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982). In *McMorris* we said:

Every state is generally free to exercise its sovereign prerogative as to the evidence it will admit in its courts. The federal constitution, however, imposes a limited restraint upon state evidentiary rules where exculpatory evidence is excluded by arbitrary state rules. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The genesis of this restriction is found in the defendant's sixth amendment right to "compulsory process for obtaining witnesses in his favor." The Constitution imposes this limitation because the state may not deny an accused in a criminal trial the right to a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). However, "the right of a defendant to present relevant and competent evidence is not absolute and [may] 'bow to accommodate other legitimate interests in the criminal trial process,'" *Hughes v. Mathews*, 576 F.2d 1250, 1258 (7th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978) (citing *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1045), although the competing state interests must be substantial to overcome the claims of the defendant. 643 F.2d at 460–61. *Accord, Pettijohn v. Hall*, 599 F.2d 476, 480–81 (1st Cir.), *cert. denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *Perry v. Watts*, 520 F.Supp. 550, 558–59 (N.D.Cal.1981). Most importantly, "where constitutional rights directly affecting the ascertainment of guilt are implicated, [a state evidentiary rule] may not be applied mechanistically to defeat the ends of justice." *Parisie v. Greer*, 671 F.2d at 1019 (7th Cir. 1982) (Cudahy, J., dissenting in part), *quoting Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973).

In balancing the competing interests underlying Wisconsin's alibi-notice rule and the constitutional policies favoring petitioner's right to testify, we must closely examine the justification for the state interest. *See Chambers v. Mississippi*, 410 U.S. at 295, 93 S.Ct. at 1045; *Hughes v. Mathews*, 574 F.2d at 1258. To be sure, Wisconsin has

---

**17.** *See note 14, supra.*

a legitimate interest in preventing the truly guilty from escaping justice by means of fabricated alibis. But we cannot see how that interest is promoted by precluding a defendant's testimony for failure to give notice. The principal reason for notice rules, as we noted at the outset of this opinion, is prevention of surprise to the state, not punishment of the accused for mere technical errors or omissions. In this situation it is difficult to see how the government can claim surprise. As an essential part of its case, the state must prove a defendant's presence during the commission of an alleged crime, proof which invariably requires pretrial investigation and preparation. Armed with this evidence, the state is in a formidable position to refute a defendant's unexpected alibi testimony, particularly where, as here, such testimony is uncorroborated by other defense witnesses. We doubt that a defendant's unsupported explanation will overcome testimony by state witnesses placing him at the scene of the crime. Thus, the prejudice to the state's case from allowing a defendant to exercise his constitutional right to testify is *de minimis* and does not warrant complete preclusion.

In addition, we do not consider Wisconsin's interest in facilitating the orderly administration of justice sufficiently important to override the accused's right to tell his version of the story. If a defendant takes the stand and denies his presence during the crime, the state can readily rebut his denial on cross-examination by asking the defendant to address the state's evidence. If for some reason the state considers its evidence significantly weakened by a defendant's unsubstantiated testimony, it should seek a continuance for further investigation, rather than seeking total preclusion of the defendant's testimony.[18] It is unlikely, however, that such defense testimony would ever have enough impact to necessitate a continuance unless the defendant's explanation was so persuasive that his innocence became apparent, in which case the proper measure would be to end the trial, not to continue it.

We are aware of only one federal decision examining the validity of the preclusion sanction as applied to a defendant's testimony.[19] In *Rider v. Crouse*, 357 F.2d 317 (10th Cir. 1966), a habeas corpus case, Rider was denied an opportunity to testify regarding his alibi for failure to provide timely notice. In his federal appeal he mounted an unsuccessful challenge to the preclusion sanction on due process grounds. The Tenth Circuit, after brief factual and legal analysis, held that excluding Rider's alibi testimony as a sanction pursuant to Kansas' alibi-notice statute did not deny Rider's right to present a defense but merely conditioned it upon notice. *Id.* at 318. The *Rider* court's sole explanation was that alibi-notice laws generally had been upheld in the past. *Id.*

18. Professor Clinton's observations on this point are most persuasive:

Excluding the accused's evidence regarding an affirmative defense is a peculiarly ironic and inappropriate way to further "the search for truth." The sanction leaves the parties no better prepared; rather, it inhibits the search for truth by rendering the criminal trial virtually an *ex parte* proceeding in which only the prosecution's case is presented. Not only is this result inconsistent with the purposes of the [alibi-notice] rule, but it obviously conflicts with the right to defend and the American jurisprudential assumptions of the importance and necessity for the adversary system in the search for truth.

Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind.L.Rev. 711, 836 (1976). *Cf. United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct.

3090, 3108, 41 L.Ed.2d 1039 (1974), where the court said:

We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.

19. Respondents suggest *Johns v. Perini*, 440 F.2d 577 (6th Cir. 1971), also dealt with this issue. Brief of Respondents-Appellees at 16. We disagree. The *Johns* Court expressly noted that the prosecuting attorney had no objection to the defendant's alibi testimony and that the trial court permitted Johns to testify. *Id.* at 579. Therefore, respondents reliance on *Johns* is misplaced.

The problems with *Rider* are plain. First, the Tenth Circuit was unaware of the Kansas statute's possible constitutional infirmities because *Rider* preceded the Supreme Court's pronouncements in *Williams* and *Wardius,* both of which suggested the importance of the preclusion issue. Second, *Rider* antedated *Washington* and *Chambers,* in which the Supreme Court struck a new balance between state procedural rules and federal constitutional rights. Finally, *Rider* also predated the Supreme Court's line of decisions commencing with *Harris* which intimate a constitutional basis for the right to testify. The unmistakable significance of these post-*Rider* developments clearly undercuts the precedential value of *Rider.* Hence, we decline to follow the Tenth Circuit's holding.

Perhaps there are situations where preclusion is a necessary sanction,[20] such as a defendant's intentional suppression of alibi evidence to gain tactical advantage, but this is not such a case. To exact so great a price to further a rule which serves little or no purpose in this context is both illogical and impermissible. We therefore hold that the Wisconsin alibi-notice statute's preclusion sanction was unconstitutionally applied against petitioner.

### Harmless Error

█ In light of our holding that the preclusion sanction as applied to petitioner violated his constitutional right to testify and to present a defense, we must address the state's contention that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). Under *Chapman,* "[t]he question is 'whether there is a reasonable possibility' that the error affected the jury's verdict. In answering this question, the court must assess the 'probable impact of the [error] on the minds of an average jury.' " *Allison v. Gray,* 603 F.2d 633, 634 (7th Cir. 1979) (citations omitted).

We believe the error in this case was harmless beyond a reasonable doubt for two reasons. First, the evidence against petitioner was overwhelming. His car was positively identified as the one used in the robbery. The robber wore clothes identical to those owned by petitioner and found under petitioner's car. The robber even had the same unusual muscular build as petitioner. For the jury to find petitioner innocent under these circumstances, it would have had to conclude that either someone built just like Alicea stole Alicea's clothes and car and then committed a robbery or that the robber's physique as well as taste in clothing and cars were remarkably similar to Alicea's. We think it impossible that a jury would believe such strange misfortunes (or coincidences) could befall any man. *Cf. United States v. Smith,* 524 F.2d 1288, 1291 (D.C.Cir.1975) (in view of the solid identification evidence, it was most unlikely that relatives' alibi testimony would have raised a doubt in the minds of the jury). ,

Second and more significantly, petitioner managed to introduce his alibi testimony despite the trial judge's preclusive ruling. During the state court trial petitioner's counsel asked whether petitioner had occasion to leave home on the morning of the Sentry robbery. Petitioner responded, "No." In his offer of proof after the trial court excluded his remaining alibi testimony, petitioner merely sought to repeat that he was at home and had received telephone calls at about the time the robbery took place. We are persuaded that no reasonable jury would have accepted petitioner's bald assertions over the strong evidence

---

**20.** *Compare Braswell v. Florida,* 400 U.S. 873, 91 S.Ct. 106, 27 L.Ed.2d 111 (1970) (Black, J., joined by Douglas and Brennan, JJ., dissenting from denial of certiorari) (state cannot enforce a mere procedural rule by denying a criminal defendant his constitutional right to present witnesses in his own behalf) *with United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (consistent with the sixth amendment, a court may enforce a preclusion sanction against a defendant who insists on introducing only a portion of relevant evidence bearing on a witness' credibility). *See also United States v. Davis,* 639 F.2d 239 (5th Cir. 1981); *Braswell v. Wainwright,* 463 F.2d 1148 (5th Cir. 1972).

adduced by the state. Because the state's evidence was overwhelming and petitioner succeeded in presenting his alibi testimony in spite of the trial court's ruling, we conclude the erroneous ruling was harmless beyond a reasonable doubt.

■ We also reject petitioner's contentions concerning the trial court's failure to give an alibi instruction. It was essential for the prosecution to prove petitioner's presence at the Sentry Food Store and the jury was so instructed. Since the jury was informed that Alicea's presence was necessary for conviction, nothing would have been added by instructing that his absence would require acquittal. Because such an instruction would have been redundant, we find no error in its omission.

### Ineffective Assistance of Counsel

■ Petitioner's final argument raises the familiar ineffective assistance of counsel claim. In *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), we defined effective assistance of counsel as assistance which meets a minimum standard of professional representation. In determining whether such assistance was rendered, the court must focus on the totality of the circumstances. *See United States v. Phillips*, 640 F.2d 87, 92 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). Petitioner bears the burden of establishing his counsel's ineffectiveness. *See United States v. Fleming*, 594 F.2d 598, 607 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979). Counsel for petitioner ably defended his client by obtaining pretrial suppression of a flawed line-up identification, cross-examining adverse witnesses, preserving for appeal the question of the preclusion sanction's constitutionality, and introducing petitioner's denial of his presence during the crime. Under the circumstances, we cannot say petitioner has "overcome the presumption that his attorney was conscious of his duties and sought conscientiously to discharge them." *United States*

*ex rel. Cyburt v. Rowe*, 638 F.2d 1100, 1105 (7th Cir. 1981); *United States v. Fleming*, 594 F.2d 598, 607 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

### Conclusion

For the foregoing reasons, the district court's denial of Alicea's habeas corpus petition is

AFFIRMED.